## R. G. ATKINSON & CO. v. W. A. & C. A. WARD.

1. TRUST: *Funds of principal converted by agent.*
The relation of an agent to his principal is one of confidence and trust as to all funds coming to his hands from the principal's business; and a court of equity may follow the funds into whatever property or change of form they may have been converted by the agent if it be possible to identify them, unless they have passed into the hands of a *bona fide* purchaser without notice.

2. SAME: *For purchase money for land.*
The rule that no trust will arise in favor of one whose money has been used in payment for land *after* the legal title has vested in the party sought to be charged as trustee, has no application where a trustee appropriates trust funds to the payment or improvement of land previously purchased for himself.

3. BONA FIDE PURCHASER: *Notice of adverse claim.*
The possession of property at the time of its purchase by another is notice to the purchaser of the claim and equity of the party in possession.

4. CONFUSION: *Agent mixing principal's funds with his own.*
When an agent mixes his own funds with his principal's he must show the amount of his own funds, or his principal will take the whole.

47 533
54 508

47 533
58 260

47 533
173 99
76 27

47 533
79 75

47 533
90 152

APPEAL from *Cleveland* Circuit Court in Chancery.
Hon. J. M. BRADLEY, Judge.

*W. P. & A. B. Grace* for Appellant.

The evidence of the Wards bears upon its face evidence of falsity on many material points, and the maxim "*falsus in uno, falsus in omnibus*," is applicable. *24 Ark., 410.*

Atkinson's testimony is clear, distinct, specific and minute, and is corroborated by many circumstances, while the Wards' is general, and amounts to nothing, except that W. A. Ward bought the property for $1500 and without notice. They failed to state material facts indisputably within their knowledge, and this strengthens Atkinson's testimony. The evidence clearly establishes a trust.

The possession of appellants was sufficient to charge W. A. Ward with notice of appellants' equities, hence he is not a *bona fide* purchaser. *16 Ark., 340.*

C. A. Ward was a trustee and confidential agent, and having converted trust funds to his own use, the appellants can follow them as long as they can be ascertained. The trust arises by operation of law. *1 Perry on Trusts, secs. 126, 132, 146; 2 Id., 836; 15 Ark., 312; 42 Id., 186.*

*W. P. Stevens* and *N. T. White* for Appellees.

It is clear that appellee, C. A. Ward, purchased the lots with his *own money*, and the *subsequent* using of appellant's money in erecting the house, if true, would not create a trust. *Perry on Trusts, sec. 133, and notes; 4 Kent Com., pp. 12, 75, 306; 2 Wash. R. P., 4 ed., 472; Ib., 480; 69 Ind., 419; 62 Ala., 129; 40 Ark., 62; Botsford v. Bunn, 2 John. Chy., 405; 64 Ala., 98; 3 Paige, 390; 27 Ark., 77.* To create a resulting trust the purchase money must be paid at the time or prior to the purchase and as a part of the same transaction. Cases *supra*, and *30 Ark., 612; 29 Ark., 612.* See also, *1 Smith L. C., 4 Am. ed., 339; 2 Paige, 217; 14 Gray, 119.*

The evidence clearly shows that W. A. Ward was a *bona fide* purchaser without notice.

COCKRILL, C. J. W. A. Ward brought his action for the possession of a lot in the town of Kingsland, against the tenants of the appellants. The appellants were substituted as defendants and filed an equitable answer and cross-complaint, in which it was alleged that they were merchants in business in the city of Pine Bluff; that in 1882 they had established a branch store at a railroad camp at the point now known as Kingsland, and placed Charles A. Ward, who is the son of W. A. Ward, in sole charge thereof, as their agent, and gave him power to conduct their mercantile business at that point; that he converted large sums of money which came to his hands in the course of his employment, to his own use, and used a part of it in the purchase of the lot in question, the conveyance being taken to him in his own name, and a part in erecting an expensive store-house on the lot; that he afterwards promised and agreed to convey the premises to them in payment of the amount he owed them, but that instead of doing so, he had conveyed the same to his father, the said W. A. Ward, and that the latter was fully apprised of their equities at the time of the conveyance to him. The prayer was that the Wards be declared trustees for their benefit, that they be compelled to convey the legal title to them, and for general relief.

The cause was transferred to equity, and W. A. Ward there answered the cross-complaint, denying that the lot was purchased or the house built with Atkinson & Co.'s money, and alleging that, if it was, he was a *bona fide* purchaser for value without notice of their equities.

The cause was tried upon the pleadings and upon the depositions of the two Wards upon the one side and that of R. G. Atkinson on the other. The chancellor found that there was no trust in favor of Atkinson & Co., and entered a decree

against them for the possession of the land and $360 for the rent of the premises.    Atkinson & Co. appealed.

The testimony shows that C. A. Ward was a minor at the time the appellants entrusted him with the conduct of their business at Kingsland, possessed of no property, and was without income except the salary to be paid him by them, which amounted to $65 per month.    In less than a year he was the owner of two town lots, and had erected a store-house upon one at the cost of $1500, and was $2000 behind in his accounts with his employers.    R. G. Atkinson testifies that he admitted to him that he had used the firm's money in erecting the store-house, and had offered to convey it to them in part settlement of his account, and agreed also to remain in their employ in the Pine Bluff business until his account was fully settled; and that in pursuance of this agreement he placed his firm in possession of the house, promising to make a conveyance of the premises to them, as soon as he became of age.    This was a few months only before his majority.    He entered Atkinson's employ at Pine Bluff, but, before arriving at his majority, he left, and soon after gave them written notice that he repudiated the agreement they claimed he had made about the property.    He also denied, in his testimony, that he had used any of the funds of Atkinson & Co. in the purchase of the lot, or in erecting the building on it, and says that his father aided him by advancing money and devoting his personal services to the erection of the house, and that he rented the premises to Atkinson & Co., and did not put them in possession in pursuance of an agreement to convey; but it is not shown how much money his father advanced him; and his father was, himself, a part of the time, a clerk in the store under the son, taking the price of his salary in supplies for his family's support.

Moreover, Atkinson was able to specify particular bills of goods which had been ordered by C. A. Ward and paid for by

the firm on account of the Kingsland business, which had gone into the erection of a store-house. No rent was ever paid by Atkinson & Co., and it does not appear that it was ever demanded, although they had been in possession more than a year when suit was brought. Altogether, Atkinson's testimony is specific, and is corroborated by circumstances, while the Wards content themselves with general assertions where it is apparent that details ought to have been given, and the withholding them weakens their testimony. They have not denied many of the circumstances pointed to by Atkinson, or offered to explain them.

We must take it as established that C. A. Ward used the funds of his principals in the improvement of the lot in controversy, but the proof fails to establish that he used any of their funds in the purchase of the lot itself. The purchase was made January 1, 1883, and the amount due him as salary was ample to satisfy the purchase price at the time of its payment. The erection of the store-house was begun in March of that year, and Atkinson testifies that Ward's business was "straight" up to that time. Atkinson knew before then that the purchase of the lots had been made, and actually negotiated with the young man about the erection of a store-house on them for the firm's use, the clerk desiring that the firm should advance the money to build the house, but his offer was not accepted.

It is not contended, under the circumstances, that the parol agreement by the minor to convey the premises can be enforced, but the appellants' contention is that they should recover upon the grounds of a constructive trust.

That C. A. Ward's relation to Atkinson & Co., was one of confidence and trust, is abundantly sustained by authority. *Pomeroy Eq., secs 959, 1049, 1088; National Bank v. Ins. Co., 104 U. S., 54, 70; McMurry v. Mobley, 39 Ark., 309; Wells, Fargo & Co. v. Robinson, 13 Cal., 133.*

1. TRUST:— Funds of principal converted by agent.

The funds in his hands which arose from their business were held by him for their use and as their property, and they must be considered as so far impressed with a trust as to give a court of equity jurisdiction to follow them into whatever change of form they may have taken, so long as it is possible to identify them, unless they have passed into the hands of a *bona fide* purchaser without notice. *Authorities supra; 2 Pom. Eq., sec. 1051; 2 Story Eq., sec. 1258.*

2. SAME:— For purchase money for lands

The appellee contends that no trust will arise in any case from acts done after the legal title has vested in the party sought to be charged as trustee, or in other words, to quote the language of Chancellor Kent that "the trust must have been coeval with the deed, or it cannot exist at all;" *Botsford v. Burr, 2 Johns. Ch., 405.*); and it is argued from this that no trust or equity is shown in this case, because C. A. Ward erected the house after he had purchased the lots for himself with his own means.

The case of *French v. Sheplor, 83 Ind., 266*, relied upon by the appellees, goes far toward sustaining their position, but it seems to us that a wrong application is made of a correct principle in the argument used.

It is a well settled principle that a trust which springs from the intention of the parties, or is dependent upon contract, either express or implied, can be raised only by virtue of the original contract of purchase, and that it cannot be brought into existence so as to divest the legal estate by the subsequent application of the funds of a third person to the payment of the purchase money, or to the improvement of this estate. This court has frequently recognized and enforced the principle. *Freeman v. Milner, 40 Ark., 62, and cases cited.* But it is properly applicable only to purely resulting trusts where there is no relation of trust or confidence between the parties, except that one advances the purchase money to the other, and the latter takes the title in his own name. This is

seen by an examination of the case of *Botsford v. Burr, supra,* which is the source of authority for most of the American cases on the subject. There the person seeking to have the trust declared in his favor had loaned another, whom he sought to charge as trustee, money to pay the purchase price of lands long after the purchase had been made and the deed executed. The vendee was a simple contract debtor without fiduciary relation to the person whose money was used, and it was held that the transaction subsequent to the purchase created no equity to hold the land.

But in the case in hand a trustee diverts the trust fund from its proper channel and converts it into a house on his own land. The fund has been followed and definitely located there, and it would be monstrous for a court of equity to give the wrong-doer the benefit of his wrong by refusing relief to the *cestuis que trust.* An agent or trustee is never allowed to profit at the expense of the beneficiary, by the use or abuse of his trust, and equity will so mould and apply the remedy as to prevent it. *May v. Le Clair, 11 Wall., 217, 236; 2 Perry Trusts, sec. 835.* Whenever another's property has been thus wrongfully appropriated and converted into a different form, equity impresses a constructive trust upon the new shape it may take, and the right to follow and claim, or charge with a lien, the product of or substitute for the original thing in the hands of the trustee, "only ceases," as Lord Ellenborough says, "when the means of ascertainment fails." *Taylor v. Plummer, 3 M. & Sel., 562; 2 Pom. Eq., secs. 1051, 1080; 2 Story's Eq., sec. 1258; Tiederman Real Prop., sec. 501; Hill, Fontaine & Co. v. Cooledge, 33 Ark., 621.*

Inasmuch as it is the conversion of the trust fund into the new form that raises the equity in this class of cases, it can make no difference whether the conversion is made at the time of the contract of purchase or afterwards. So long as the rights of innocent purchasers have not intervened, the only

question is the identity of the trust fund.  *Preston & Stetson v. McMillen, 58 Ala., 84;  Lehman v. Lewis, 62 Ib., 129;  Burks v. Burks, 7 Baxter, (Tenn.), 353;  Turner v. Pettigrew, 6 Humph., (Tenn.), 438;  Haines v. Haines, 54 Ill., 74.*

This distinction was applied by this court in the case of *Dyer v. Jacoway, 42 Ark,, 186,* where the right of the creditors of an estate to charge a lien upon the lands of an administrator's wife was allowed, upon the creditors showing that the administrator had erected a dwelling-house upon the wife's lands with the funds of the estate by and with her connivance. See too, *Haines v. Haines, supra.*

3. BONA FIDE PURCH AS E R:— Notice of adverse claims.

II.   If the proof sustained the claim of W. A. Ward to the effect that he was a *bona fide* purchaser without notice of the equities of Atkinson & Co., he would be entitled to hold the land freed of their claims.  But if there was nothing else in the case upon this point except the possession of the premises by Atkinson & Co., at the time he purchased, that alone would be sufficient to charge him with notice, (*Hamilton v. Fowlkes, 16 Ark., 340;  Byers v. Engles, Ib., 543;  Bird v. Jones, 37 Ib., 195*), and deprive him of the protection extended to an innocent purchaser.  *2 Pom. Eq., sec. 1048.*  It is unnecessary then to consider the other facts which tend to break down his claim of *bona fides.*

4. CONFUSION: By agent, of principal's funds with his own.

III.   An effort was made by C. A. Ward to show the source from which the means came to enable him to erect the house. It was shown that his father had rendered personal services in building the house and that he owed him $150 therefor.  No other item was specifically pointed out or designated.  But if he mixed his own funds with those of his principal in the erection of the house it was incumbent upon him to show the amount of his own funds used, else his principals must take the whole.  This is not upon the notion that strict justice will be done between the parties, but upon the ground that it is the

only justice that can be done, and that it would be inequitable to suffer the fraud of the agent or trustee to prejudice the rights of the beneficiary. *1 Perry on Trusts, sec. 128; 1 Story Eq., 468; 2 Pom. Eq., sec. 1076.*

The store-house is shown to have cost $1500. It must be taken then as proved that that amount of Atkinson & Co's. funds, less the sum of $150, went into its construction, and under the prayer for general relief they were entitled to have a charge declared upon the premises and a sale to satisfy it. They have, however, enjoyed the rents and profits, and should be charged therewith after allowing them for any taxes paid and necessary repairs made by them, treating them in the nature of mortagees in possession; but the record affords no means of determining the rental value of the premises. The order, therefore, will be that the decree be reversed, and the cause remanded with instructions to take proof upon the single issue of the net rental value of the premises during the period Atkinson & Co. have held possession, and after ascertaining the amount due on that account, to deduct it, and the sum of $150, from the $1500 which the house cost, and to declare the remainder a charge upon the premises in Atkinson & Co.'s favor, and, if necessary, sell the lands to discharge it—the $1350 of A. & Co.'s money to bear interest at 6 per cent. per annum from July 1, the date of the completion of the building, and the rents due Ward to bear interest at the same rate from the end of each month of A. & Co.'s occupancy.