## REMSHARD v. RENSHAW.

### Opinion delivered February 12, 1912.

1. TRUST—WHEN CONSTRUCTIVE TRUST ARISES.—Where a husband falsely represented to his second wife that he had no children, and, relying thereon, she permitted him to use her money in improving his home and paying off a mortgage thereon, equity will enforce a constructive trust in her favor at his death.   (Page 311.)

2. SAME—WHEN CONSTRUCTIVE TRUST ENFORCED.—Whenever another's property has been wrongfully appropriated and converted into a different form, equity impresses a constructive trust upon the new shape it may take, and charges with a lien the product of a substitute for such property, so long as it can be ascertained.   (Page 312.)

3. ADMINISTRATION—FINAL ACCOUNTS—EFFECT OF APPROVAL.—The judgment of a probate court approving the accounts of an administratrix is conclusive as to the amount of property received by her and the amounts distributed in payment of debts and expenses of administration.   (Page 313.)

Appeal from Craighead Chancery Court, Western District; *Charles D. Frierson,* Chancellor; affirmed with modification.

*J. F. Gautney*, for appellant.

1. The court erred in charging the real estate with a trust for $946.00 and interest. The money was not paid *at the time of the purchase* by the *cestui que trust* with the understanding and agreement that she was to have an interest therein. 93 Ark. 93; 49 *Id.* 430; 54 *Id.* 499; 2 Johns. Ch. 406; 34 U. S. 1091; 21 *Id.* 570; Pom., Eq. Jur. § 1037. Mere payment of money on land or improvements after the purchase does not create a trust. 79 Ark. 164; 29 *Id.* 612; 40 *Id.* 62. The evidence of such a trust must be clear and convincing. 64 Ark. 155; 82 Ark. 569; 89 *Id.* 192.

2. The sum charged is excessive.

3. The court erred in denying appellants any part of the personal estate. The order of the probate court was void. Kirby's Digest, § § 169, 170-1. Even on collateral attack. 55 Ark. 562; 62 *Id.* 439; 65 *Id.* 566; 69 *Id.* 591.

*Lamb & Caraway*, for appellee.

1. The decree of April term, 1908, is a bar. Kirby's Digest, § 6259; 1 Ark. 503; 7 *Id.* 70; 20 *Id.* 97; 21 *Id.* 462; 72 *Id.* 613; 29 Cyc. 272. 21 A. & E. Enc. Law, 313.

2. The evidence shows a resulting trust. 64 Ark. 155; 70 *Id.* 145; 72 *Id.* 456; 73 *Id.* 310; 73 *Id.* 338; 136 S. W. 934; Perry on Trusts, § 170; Story, Eq. Jur. (1857 ed.) vol. 2, § 1237; Jones on Liens (1888) vol. 1, § 39; 6 N. E. 116.

McCulloch, C. J. George Remshard was a soldier of the United States in the Mexican war, and was honorably discharged from the military service in August, 1851, at Fort Constitution, in the State of New Hampshire. He was married to Elizabeth P. Boggs at the city of Philadelphia in the year 1855, and had five children, the issue of that marriage. He disappeared and deserted his family in 1876, and they heard nothing of him until after his death, which occurred in 1907 at Jonesboro, Arkansas, where he then resided. His wife, Elizabeth P., died in 1884, and, under the name of Renshaw, which he assumed after leaving his former home and family, he was married to appellee, Anna M., at Jonesboro, Arkansas, in February, 1890. He bore that name during the remainder of his life, and his wife and acquaintances knew him only by that name. He told his wife that he had no children or other kin-

dred. When he died, he owned a homestead in the city of Jonesboro, which he acquired after his intermarriage with appellee. He also owned, in addition to his household effects, other property consisting of money in bank. Appellee administered on the estate of her deceased husband, and paid all debts of said estate. She filed her final settlement account as such administratrix, showing that she had paid all the indebtedness of the estate and that the chancery court of Craighead County had rendered a decree vesting in her all the property of said decedent; and the probate court on July 15, 1908, entered an order approving said account and discharging her. She instituted an action in the chancery court of Craighead County against the unknown heirs of George Renshaw, and in April, 1908, that court rendered a decree reciting a finding that George Renshaw left no children or other heirs at law and vesting in her the title to all of the property of said decedent. Appellants, who are the children and grandchildren of George Remshard, instituted the present action on May 31, 1910, against appellee in the chancery court of Craighead County for the purpose of cancelling said former decree as a cloud on their title as heirs of said decedent to the real estate owned by him at the time of his death, and also requiring appellee to account to them for the personal estate of said decedent. The chancery court decided that, as to the real estate, appellee is entitled to a lien thereon for the sum of $1,542.08, which amount the court found had been used of her funds in constructing the dwelling house on the lot in question, and, as to the personal property, the court decided that appellants are barred by the judgment of the probate court confirming appellee's final settlement account as administratrix.

As the chancellor did not uphold the former decree vesting title to the real estate in appellee, but decreed the title to be in appellants subject to appellee's homestead right and her lien aforesaid, we need not consider the question of the validity of the former decree, and will confine ourselves to an inquiry whether the chancellor was correct in declaring a lien in appellee's favor. The evidence tends to establish the fact that appellee received from her own separate estate the sum of $946 in money, which was used by her husband in paying for the construction of the dwelling house on the lot in Jonesboro which

he had purchased. At least, a portion of the money was received after the house was completed, but it was used in discharging a mortgage on the property given for borrowed money used in building the house. Her husband represented to her that he had no children or other relatives, and that upon his death she would inherit all his property. In reliance upon those representations,. she permitted him to use her money in paying for the construction of the house and in discharging the mortgage on the property. The chancellor found those to be the facts, and his decision in delcaring .a lien in her favor was correct. The money used was a part of her own estate and remained her separate property as long as she chose. She parted with it and allowed her husband to use it in improving his own property and in discharging the mortgage lien solely on the faith of his false representations that the property would come back to her at his death because of there being no other heirs. The result is the same as if she had entrusted the money to him as her agent, and he had wrongfully used it in improving his own property and in discharging liens thereon. In that case he would be held to be a trustee for her, and a lien in her favor for the money wrongfully used would be declared on the property into which the money could be traced. *Atkinson* v. *Ward*, 47 Ark. 533. She is entitled to subrogation to the extent of the amount of her money used in discharging the mortgage lien. *Spurlock* v. *Spurlock*, 80 Ark. 37.

Counsel for appellants invoke the principle that a resulting trust will not be declared on account of payment of purchase money unless the same be paid at the time of the purchase. *Milner* v. *Freeman*, 40 Ark. 62; *Red Bud Realty Co.* v. *South*, 96 Ark. 281. That principle has, however, no application to the facts in the present case. Appellee is not seeking to enforce a resulting trust, but she seeks to enforce a lien by reason of a constructive trust arising from the wrongful use of her money. *Atkinson* v. *Ward, supra.* The court did not decree the title to be in her as *cestui que trust,* but merely declared a lien in her favor for the money wrongfully used in improving her husband's property and in discharging the prior lien. The evidence was sufficient to warrant the conclusion that the money was used in the way the appellee claimed.

"Whenever another's property has been thus wrongfully

appropriated and converted into a different form, equity impresses a constructive trust upon the new shape it may take, and the right to follow and claim, or charge with a lien, the product of or substitute for the original thing in the hands of the trustee 'only ceases,' as Lord Ellenborough says, 'when the means of ascertainment fails.'" *Atkinson* v. *Ward, supra.*

The contention of appellants, that this case is ruled by *Butterfield* v. *Butterfield,* 79 Ark. 164, can not be sustained for in that case there was merely a voluntary loan, by a sister to her brother, of money used in payment for property subsequent to the purchase thereof, and the court held that there was no resulting trust. The question of wrongful use of funds did not arise in that case.

The appellants insist that the chancellor allowed $56.28 too much in computing interest, and we find that contention to be correct. The decree to that extent will be modified. This error does not appear to have been called to the attention of the chancellor, otherwise it doubtless would have been corrected.

As to the personal property, appellee's settlement accounts as administratrix in the probate court were not successfully assailed for fraud, and the judgment of that court approving the final account is conclusive as to the amount of property received by her and the amounts distributed in the payment of debts and expenses of administration. Those accounts show that she received $1,004.76 in money, and paid out $375.15 on debts and expenses of administration. She was entitled to retain $300 in accordance with the provisions of section 3 of Kirby's Digest (there being no minor children), and the further sum of $150 under section 74 of the Digest (the estate being solvent), and, in addition thereto, she was entitled to the sum of $334 as her dower out of said funds. *Ex parte* Grooms, *post* p. 13. These amounts to which she was entitled aggregate the sum of $784.92, leaving a balance of $219.84, which is less than the amounts which she expended in the payment of debts and expenses of administration. It appears somewhere in evidence that there were household effects of the value of about $500, which she retained, but the evidence as abstracted by appellants does not show of what articles this property consisted. Appellee was entitled to take advantage of the provisions of section 72 of the Digest, which allows the widow to

retain "all the wearing apparel of the family for their own use, her wheels, looms, sewing machines, and other implements of industry, all yarn cloth, and clothing made up in the family for their use, and such grain, meat, vegetables, groceries and other provisions as may be necessary for herself and her own and her husband's family residing with her, for a period of twelve months; also, her household and kitchen furniture, beds and bedding, sufficient for herself and family residing with her."

The question, whether she had the right to retain all the household effects has not been argued, and therefore we need not inquire further whether all the articles fall within the provisions of section 72 above quoted.

Upon the whole, we think that the chancellor's decree was correct, whether based on correct reasons or not. With the modification indicated above, the decree is affirmed.