## GORDON *v.* CLARIDY.

### Opinion delivered February 9, 1920.

1. TRUST—PART PAYMENT OF PURCHASE MONEY.—Payment of part of the purchase money of a tract of land will not be sufficient to establish a resulting trust unless it was paid to purchase some definite interest or determinate aliquot part of the property.

2. LIENS—PAYMENT OF PART OF PURCHASE MONEY.—Evidence that a wife furnished part of the purchase money of land, though insufficient to establish a resulting trust in favor of her or her heirs, *held* sufficient to support a finding awarding a lien on the land for the amount of money so furnished.

Appeal from Clay Chancery Court, Eastern District; *Archer Wheatley,* Chancellor; affirmed.

*W. E. Spence,* for appellant.

The evidence makes a case of resulting trust. 101 Ark. 451; 40 *Id.* 68. The evidence clearly shows that it was the intention of the parties that Myrtle May Claridy was to have a part of the land when it was paid for, as she had furnished part of the money in paying therefor. 101 Ark. 451; 79 *Id.* 69; 81 *Id.* 478; 96 *Id.* 281; 89 *Id.* 452.

*T. W. Davis* and *S. C. Costen,* for appellees.

The evidence fails to meet the requirements of a resulting trust by parol. In the main it is neighborhood gossip. All the circumstances refute the idea of such a trust. The tract involved was purchased before the Myr-

tle May Claridy land was sold. It was paid for with promissory notes executed by T. C. Claridy alone, and the principal part of the consideration was paid after Myrtle May Claridy's death. She furnished, if anything, not to exceed one-third of the purchase money and certainly can not claim that Claridy agreed to convey to her 80 acres, or more than one-half of the land, and that the best improved, to the exclusion of his other children. A resulting trust could not arise, and 40 Ark. 68 does not apply, as the proof does not meet the requirements of that case. 101 Ark. 451 is clearly against appellant's contention. The chancellor based his finding on 102 Ark. 309, which does not govern this. This case is similar to 89 Ark. 180.

The witness Luther Claridy best expresses the true intention of the parties to this transaction. Equity and good conscience demand that this widow and her children share equally with the others, and the decree should be reversed on the cross-appeal.

SMITH, J. Appellant brought this suit for the purpose of having a resulting trust declared in her favor. In her complaint she alleged that she was the only child of her mother, Mrs. Myrtle May Claridy, who, on August 17, 1897, owned a forty-acre tract of land in the Eastern District of Clay County. Her father, T. C. Claridy, at the same time also owned a forty-acre tract of land, and it was agreed by her father and mother that they would each sell their forty-acre tract and buy the south half northwest quarter, section 3, and southwest quarter northeast quarter, section 3, township 18 north, range 8 east, Clay County, Arkansas, and that her mother should have the west eighty, which is the south half, northwest quarter, and that her father should have the other forty, and that pursuant to this understanding Mrs. Claridy sold her land and delivered the proceeds of the sale to Mr. Claridy, who bought the land above described and used Mrs. Claridy's money in so doing, pursuant to the agreement to that effect. The answer denied these alle-

gations.  Claridy sold his own forty-acre tract and used
the proceeds of that sale in meeting the payments on the
larger tract.

The court below denied the relief prayed, but found
the fact to be that Mrs. Claridy had advanced the sum of
$400 which was used in the purchase of the land sought to
be charged with the trust, and awarded appellant a lien
on all the land for that sum, with interest thereon, and
both parties have appealed.

In support of the allegations of the complaint, it was
shown that Mrs. Claridy executed a deed to her land on
November 10, 1897, for the consideration of $550, and
that she died soon thereafter, at which time appellant was
a baby.  That Mr. Claridy obtained only a bond for title
for the land, when he made the contract for its purchase,
and that he did not complete his payments until January
17, 1902, at which time he received his deed and took
title to all the land in his own name.  Thereafter Mr.
Claridy married again, and had other children, and re-
sided on the land until his death, which occurred Decem-
ber 24, 1917.

The matter of the sale of the two forty-acre tracts
of land and the purchase of the one hundred and twenty
acre tract appears to have been known to the neighbors
generally, and to have furnished subject-matter for nu-
merous conversations among them, and much of the tes-
timony is objected to on the ground that it was mere gos-
sip.  There was a witness, however, who was in a posi-
tion to know the facts.  This witness was Luther Claridy,
a brother of T. C. Claridy, and, therefore, an uncle of all
the children of T. C. Claridy, involved in this litigation.
This witness appears to be disinterested, and his testi-
mony was evidently accepted as true by the court below,
as the finding of fact made by the court conformed
thereto.  This witness stated that as a young man he
lived with his brother during the lifetime of Mrs. Myrtle
May Claridy, who had been dead about eighteen years,
and that his brother died December 24, 1917, and that
appellant, Verdie Claridy Gordon, was the only child

born to his brother and Mrs. Myrtle May Claridy. That Mrs. Claridy owned forty acres of land when she married, which was sold about the time the larger tract was purchased, and that his brother told him about the money he received for the land belonging to his wife, and that his brother told him "he was putting $400 down on that land," and that he helped his brother clear a part of the 120-acre tract soon after its purchase, and that his brother built a barn thereon which cost about $150. That he had never heard his brother say anything about conveying any land to Mrs. Claridy, but had heard her speak of it, and that "she talked like she was to get eighty." That his brother told him that he was going to put his wife's money into the land, and Mrs. Claridy told him afterwards this had been done.

In opposition to granting appellant any relief, it is insisted by cross-appellants that the 120-acre tract was purchased before Mrs. Claridy's forty-acre tract was sold, and that most of the purchase money was represented by the promissory notes of Claridy, the larger portion of which were paid after the death of his wife, and that, even though the entire proceeds of the sale of Mrs. Claridy's forty had gone into the purchase of the larger tract, that sum was only about one-third of the purchase price of the larger tract. In answer to this it may be said that while the larger tract was purchased before Mrs. Claridy's land was sold those transactions were practically contemporaneous, and it is certain that one was sold to raise money with which to purchase the other, and that $400 of this money was used for that purpose; and while it is possible that even more of the purchase money derived from the sale of Mrs. Claridy's land was thus applied, that fact does not sufficiently appear to warrant us in disturbing the chancellor's finding of fact on that subject.

The case of *Long* v. *Scott,* decided by the Court of Appeals of the District of Columbia, 24 App. D. C. 1, announced the principle which controls here, and which was applied by the court below. It was there said:

"* * * We are of opinion that neither the bill of complaint, nor the testimony taken in support of it, shows sufficient ground for the declaration of a resulting trust in this case in favor of the complainant for the portion of the purchase money of the property in controversy shown to have been paid by her. For the establishment of such a resulting trust, it must be clearly shown that the whole purchase money was paid by the person seeking to have such interest declared, or that the purchase was of some definite interest or determinate aliquot part of the property. In the absence of any satisfactory proof of the amount of the purchase money in this case, and therefore of proof as to the proportion of the sum of $400 advanced by the complainant to the whole purchase money, it is impossible to establish a resulting trust in any part or share of the property in favor of the complainant.

"But, while the bill of complaint and the testimony are insufficient to establish a resulting trust, we are likewise of the opinion that there is sufficient allegation and ample proof of facts in 'this case to show an equitable lien on this property in favor of this complainant to the amount of $400. * * * Here an express agreement is shown, although not in writing, whereby, in consideration of the contribution by the complainant of the sum of $400 to the purchase money of a certain piece of property, she was promised by the purchaser that she should have practically a life estate in the premises, in common with the purchaser; and, upon that inducement and with that agreement between herself and her son, the purchaser, she paid her share of the money and entered into the possession of the property, and retained that possession until she was evicted under what she would seem to regard as false representations." See, also, section 1178, Jones on Liens (3 Ed.).

In the case of *Remshard* v. *Renshaw,* 102 Ark. 309, a wife allowed her husband to use her money in improving his property and in discharging a mortgage lien thereon on the faith of the husband's false representation that

the property would come back to her at his death because of there being no other heirs. The court below refused to vest title in the widow, but decreed a lien in her favor to the extent of her advances, and in approving that decree this court there said: "The result is the same as if she has entrusted the money to him as her agent, and he had wrongfully used it in improving his own property and in discharging liens thereon. In that case he would be held to be a trustee for her, and a lien in her favor for the money wrongfully used would be declared on the property into which the money could be traced. *Atkinson* v. *Ward*, 47 Ark. 533. She is entitled to subrogation to the extent of the amount of her money used in discharging the mortgage lien. *Spurlock* v. *Spurlock*, 80 Ark. 37."

So here we conclude that, while the testimony does not warrant us in decreeing the existence of a resulting trust in favor of Mrs. Claridy's heir-at-law, we do think it supports the action of the court below in awarding her a lien on the land for the sum of money shown to have been used in purchasing the land, and the decree of the court below is, therefore, affirmed both on the appeal and on the cross-appeal.