

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Dan W. Jackson
District Attorney
Houston, Texas

Dear Sir:

Attention: Mr. Conrad J. Landram
Assistant District Attorney

Opinion No. 0-5059
Re: Where vacant property is purchased under an executory contract, and legal title retained in vendor, and the vendee makes valuable improvements thereon, are the land and improvements separable for the purpose of taxation, and against whom should the taxes be assessed if the land and improvements are not separable?

The facts upon which we predicate this opinion are clearly stated in your letter of January 20, together with the copy of the contract of sale and purchase submitted therewith, which we copy as follows:

"I would like to submit for an opinion the following questions:

"Under the facts hereinafter outlined, has the Assessor authority to make a separate assessment against the improvements alone and if the rendition list which the owner of the land signed included, as is usual, a separate assessment for the land and a separate assessment for the improvements, is the owner of the land liable for the taxes on both assessments? The special facts are:

"The owner of the land, prior to the erection of any improvements, sold the vacant lot to a purchaser under a form of contract a copy of which is hereto attached. This seller owned the lot, which was vacant on the execution of the contract of sale, and had made no conveyance to the contract purchaser on or prior to January 1, of the assessment year. However, the contract purchaser, prior to January 1 of the assessment year had erected improvements on the lot entirely at his own expense. The seller was at no time under any obligation to erect improvements or advance funds for that purpose. There has been no forfeiture of the contract of purchase and the purchaser was in possession on such January 1 and thereafter. The contract of purchase was not paid out on such January 1 and was not ready for execution of deed to the purchaser.

"We may assume that the owner who signed said rendition list did not notice that the office of the Assessor had also included an assessment against the improvements on the lot, and that if he had noticed it, he would not have signed the rendition. I mention this as a fact to consider in deciding the second question. However, the answer to the second question might not answer the first question, and we respectfully request your consideration of both questions.

"I have reached the conclusion that the assessment of the improvements against the owner of the lot is both lawful and mandatory.

"I have found no statute or decision which permits the value of the improvements to be excluded from an assessment of the land and which permits a separate assessment on the improvements against a different party except where the improvements have been severed from the land by contract or otherwise and are owned by some person other than the owner of the lot. The general rule is that improvements are fixtures and belong to the owner of the lot as part

Honorable Dan W. Jackson, Page 3

of the land unless made a chattel by some recognized act of severance, either actually or constructively.

"A contract may operate as a constructive severance, but the contract in question does not appear to do so. It contains no provision whatever as to the ownership of the improvements and I presume that on forfeiture they will revert to the owner of the lot. The contract emphasizes the continuing ownership of the seller in the land itself by providing that the seller shall pay all State and County taxes until the purchase price is paid out. It provides that on forfeiture the contract purchaser shall immediately surrender peaceable possession of the premises to the seller.

"There is nothing in the facts to indicate that the seller holds the title to the land as a mere naked trustee under an absolute duty to execute a Deed to the purchaser.

"The owner of the lot in this particular case advises me that one of the other taxing units follows the practice of placing a separate assessment of the improvements on the unrendered roll against the contract purchaser.

"I would appreciate your rendering an opinion on this matter or sending me copies of other opinions if these particular questions have already been clearly settled."

"CONTRACT FOR DEED

"KNOW ALL MEN BY THESE PRESENTS: That we (Here appears name of Seller) , of the County of Harris, and State of Texas, for and in consideration of the sum of $_____ to us in hand paid by_____ of_____ the receipt of which is hereby acknowledged, and the further agreement on _____ part to pay a further sum of $_____ on the _____ day of _____ 194___ , and a like amount on the day of each succeeding month thereafter until

a total sum of $_____ dollars has been fully
paid, the said (here appears name of Seller)
agree that upon the payment of said sum of
$_____ Dollars in the manner, and at the time
above stated, they will execute and deliver
to the said, _____a good and suf-
ficient Warranty Deed, to

Lot No. _____ in Block No._____

Lot No. _____ in Block No. _____

Lot No. _____ in Subdivision of Lot No. _____
in Block No._____ as shown on the Map of _____
_____Addition to Houston, which
is recorded in the office of the County Clerk
of Harris County, in the State of Texas.

"The purchaser above named is entitled
to the following benefits under this contract
according to conditions named herein, First:
The said (here appears name of Seller) agree
to pay all State and County taxes on this
property until the installment payments are
completed according to contract.
Second: The said (here appears name of Seller)
will not charge any interest on deferred pay-
ments, provided they are paid when, and as
they become due.
Third: The said (here appears name of Seller)
agree to carry this contract in full force for
thirty days after payment is due, and in case
of illness will carry this contract for six
months on certificate from practicing physi-
cian, and the payment of a fee of fifty-cents
per month on each lot.
Fourth: In accordance with the agreement
signed on the _____ day of _____ 194____
by the purchaser above named, which agreement
is made a part hereof, the said purchaser agrees
that _____ will make all installment pay-
ments when due, and should default be made on
the payment of any installment for a period of
thirty days after due, except in case of ill-
ness as stated in clause Three, then all pre-
vious payments shall be forfeited to the said

(here appears name of Seller) as rental charges
for the use and possession of the above named
property from date of this contract, and this
contract for deed shall, become null and void
thenceforth, and the above named purchaser shall
in that event be likewise relieved from all res-
ponsibility under this contract, and the posses-
sion of said premises shall immediately be peace-
ably surrendered to the said (here appears name
of Seller) or their heirs, successors or assigns.

"IN WITNESS WHEREOF, the said (name of
seller) has signed these presents on this the
_____ day of _____ A.D., 194__.

_____

_____            "

_____

Your inquiry may be resolved into two questions:

First, may the land and improvements, under the
facts set out by you, be assessed separately; against the
vendors in the contract as the owner of the land and against
the vendee as the owner of the improvements erected thereon
by him.

Second, if we should conclude that the land and im-
provements cannot be legally assessed separately as compre-
hended in the first question, then who may be legally regarded
as the owner for the purpose of assessments and collection of
the taxes, the vendor or the vendee.

The first question is easier to answer than the
second, and should in any event be answered first.

Article 7146, Vernon's Revised Civil Statutes of
1925, provides:

"Real property for the purpose of taxation,
shall be construed to include the land itself,
whether laid out in town lots or otherwise, and
all buildings, structures and improvements, or
other fixtures of whatsoever kind thereon, and
all the rights and privileges belonging or in
any wise appertaining thereto, and all mines,

minerals, quarries and fossils in and under
the same."

By this article the Legislature has laid down a
comprehensive definition of what constitutes real property
for purposes of taxation, and we think without reference to
private contracts between private parties with respect there-
to. In the case of Miller et al. v. Himebaugh, 153 S.W. 338,
(writ refused) the court said:

" . . . . It is a general rule that fix-
tures, such as a house, become part of the
realty upon which it is situated, and, as
such, cannot be severed. There is nothing
in the record which takes this case out of
the rule. Had Miller been a bona fide pur-
chaser, there could be no question but he
would have held the house as part of the
land, and appellee would have had to look to
Reed personally for compensation. If the
rules of equity have fastened a trust on the
house which is part of the land upon which
it is situated, then, as it cannot be severed
therefrom, a court of equity, we think, will
decree a lien on the land of which it is a
part and direct a sale thereof in order to
protect the interest of appellee. Atkinson
v. Ward, 47 Ark. 533, 2 S.W. 77; Vivion v.
Nicholson, 54 Tex. Civ. App. 43, 116 S.W.
388; Kennedy v. Barker, 59 Tex. 162; 3 Pome-
roy's Eq. Juris. (3d Ed.) § 1051."

In the case of City of Texarkana v. Texas-Pacific
Railway Co., et al., 198 S.W. 804, taxes were assessed by
the City of Texarkana as personal property against the T. &
P. Railway Company and other railroads, against a viaduct
constructed by the railroad over their tracks at a much
traveled street crossing. Under appropriate city ordinances
and a contract between the city and the railroad, a viaduct
was constructed by the railroad over this street crossing
to remove the hazards of such public crossing. The contract
provided:

"It is understood that the viaduct is to
be a permanent structure, and the right of way

which the city obligates itself to furnish
and to procure is to be permanently used
therefor."

Chief Justice Wilson of the Texarkana Court of Civil Appeals in a brief opinion said:

"The suit was brought and prosecuted
on the theory that the viaduct was personal
property and subject to taxation as such.
As we think the effect of article 7504, Vernon's Statutes, was to require the court to
treat the viaduct as real property for the
purpose of taxation, it is not necessary to
determine whether, if it should have been
treated as personal property, it appeared
that appellees owned it, and if they did,
whether they had so dedicated it to the public as to exempt it from taxation. Const.
art. 8, § 2; Vernon's Statutes, art. 7504;
Special Laws 1907, c. 104, §§ 251, 274; 1
Cooley on Taxation, 263; 13 Cyc. 449-453;
40 Cyc. 201; 8 R.C.L. 910; 9 C.J. 422; Lamar
Co. v. Clements, 49 Tex. 347; Commonwealth
v. City of Richmond, 116 Va. 69, 81 S.E.
69; Commonwealth v. Bridge Co. (Ky.) 105
S.W. 378. Said article 7504 is as follows:

"'Real property, for the purpose of
taxation, shall be construed to include the
land itself, whether laid out in town lots
or otherwise, and all the buildings, structures and improvements, or other fixtures
of whatsoever kind thereon, and all the
rights and privileges belonging or in any
wise appertaining thereto, and all mines,
minerals, quarries and fossils in and under
the same.'

"It was not pretended in either the pleadings or evidence that appellees had not paid
all taxes assessed by appellant against land
owned by them on and over which the viaduct
was constructed. When appellees paid those
taxes they paid the taxes assessable against
the viaduct and owed appellant nothing on
account thereof."

Article 7504, Vernon's Revised Civil Statutes, referred to and quoted by Judge Wilson is the same now as Article 7146.

We must not confuse the power of the Legislature, to define what is meant by real property for the "purposes of taxation" as is done in Article 7146, Vernon's Revised Civil Statutes, and what is defined as personal property for the "purpose of taxation", as is done in Article 7147, Vernon's Revised Civil Statutes, with which is concerned the inherent sovereign power of the State to tax with private contractual rights between individuals upon the subject, as in the case of Clayton v. Phillips, 159 S.W. 117; Winchester Fire Insurance Co. v. Room, 215 S.W. 985; Edwards v. Thanish, 254 S.W. 523; with the latter the Legislature was not concerned when it enacted the two foregoing articles defining what constitutes real property and personal property for the purpose of taxation.

Our opinion is, under the facts presented, that the improvements and the land are not separable for the purposes of taxation.

We now pass to the second and more difficult question as to who is the "owner" for the purpose of taxation under the facts submitted by you. Article 7152, Vernon's Revised Civil Statutes, 1925, par. 1, is as follows:

"All property shall be listed or rendered in the manner following:

"(1) By the owner. Every person of full age and sound mind, being a resident of this State, shall list all of his real estate, moneys, credits, bonds or stock of joint stock or other companies (when the property of such company is not assessed in this State), moneys loaned or invested, annuities, franchises, royalties, and all other property."

It is observed that the Legislature does not tempt to define "owner" as used in this article of th thus leaving it for judicial interpretation in conr the subject under which it is here found, namely. and rendering of property for taxation.

We think it definitely settled i a vendee, in possession under an executory at the date of assessment as provided in Ar

is the "owner" for the purpose of taxation. We concede
that the word "owner" has no technical meaning. Under
different circumstances the word "owner" has been held
to mean the person having the legal title, and under
other circumstances the one who has the equitable title.
To review the many varied decisions upon the subject
would extend this opinion to unnecessary length. We
deem it sufficient to say that it is settled in this
State that a vendee under an executory contract, of pur-
chase and in possession at the time fixed by law for
assessment is the owner for purposes of taxation. The
Court of Civil Appeals in the case of Taber v. State,
85 S.W. 835, (writ of error refused) has held under a
similar state of facts that the assessment was made pro-
perly against the vendee in such executory contract and
not the vendor. In that case taxes were assessed against
the property, and it was contended that because legal
title remained under the contract in Dallas County until
the entire purchase price had been paid, that the proper-
ty was, under the Constitution, exempt from taxation as
the property of Dallas County. The court held to the
contrary, and that the purchaser should be regarded as
the owner, regardless of the fact that the legal title
had not vested in the purchaser. It stated this hold-
ing as follows:

> "That our tax laws should be construed,
> as they long have been, to require the ven-
> dee holding lands under an executory contract
> of sale to pay the taxes assessed against
> such lands, we entertain no doubt. Lands so
> held are subject to execution as the property
> of the vendee, and the title of such vendee
> will support an action of trespass to try
> title. The fact that a county is the vendor
> ought not to change the legal status of such
> vendee. True, it has been held that county
> school lands, so long as they remain the prop-
> of the county, are exempt from taxation, even
> in the hands of a lessee (Daugherty v. Thompson,
> 71 Tex. 192, 9 S.W. 99); but after the lands
> are sold by the county they become the proper-
> ty of the vendee for purposes of taxation, as
> well as of execution, even though the sale be
> on a credit, and the contract executory. It
> would certainly be unreasonable to treat a

county selling its school lands on a credit as
owner both of the notes or obligation taken
for the purchase price and of the land. True,
the county is not entirely divested of title
to the lands until they are finally paid for,
but until a forfeiture or rescission takes
places on account of the default of the pur-
chaser the purchaser is to be regarded as the
owner, and the lands may be sold for taxes as
his property."

This rule of law was sustained by the Austin Court
of Civil Appeals in the case of Harvey v. Provident Invest-
ment Co., 156 S.W. 1127. In that case the court said:

". . . Because it has been held in this
state that when a grantor in a deed purport-
ing to convey land retains a vendor's lien,
the legal and paramount title remains in the
vendor, therefore appellant contends that with-
in the purview of the tax laws authorizing a
suit by the state against unknown owners, the
vendor, and not the vendee, in such a deed is
to be considered the owner. We do not regard
that contention as sound. On the contrary,
such a vendee has title to the property against
every one except his vendor; as between him
and the vendor it is his duty to pay all taxes
which accrue against the property, and there-
fore, for the purpose of taxation, he should
be considered the owner of the land."

It was held in the case of Bone v. Cowan, 84 S.W. 385, that
one is the "owner" and so, entitled to purchase contiguous
public land, when he has an oral contract to purchase it,
under which he had taken possession and made improvements
permanent and valuable relative to the value of the land.

A few cases from other jurisdictions are noted.
In the case of Ritchie v. City of Green Bay, 254 N.W. 113,
95 A. L. R. 1081, it was held that a vendee in possession
under land contract obligating him to pay purchase money
is owner of property, within statute exempting realty owned
by lodge from taxation. To the same effect is the case of
Bowls v. Oklahoma City, 104 P. 902, 24 L. R. A. (N.S.) 1299,

holding that the vendee of realty in possession under an executory contract of sale at the date of the assessment is the real owner for the purpose of taxation.

Under the authority of the above cases, we hold that under the facts submitted by you the land and improvements are not separable for purposes of taxation and that a vendee in possession, who has made valuable improvements under an executory contract to purchase, when no forfeiture has occurred, is to be regarded as the owner for the purpose of taxation.

We have not overlooked the following provision of the contract between the vendor and vendee or seller and purchaser:

"... . The said (here appears name of Seller) agree to pay all State and County taxes on this property until the installment payments are completed according to contract . . . ."

Under this provision of the contract the vendor or seller owes the taxes, and the vendee or purchaser would have a right of indemnity against the vendor or seller for the State and county taxes, which he, the vendor or seller, obligates himself to pay under this provision of the contract for such State and county taxes as may be assessed and collected against the vendee or purchaser, whom we have held to be regarded as the owner for the purpose of taxation.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

L. P. Lollar
Assistant

LPL:ff


APPROVED OPINION COMMITTEE BY CHAIRMAN