KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* FORT SMITH SUBURBAN RAILWAY COMPANY.

Opinion delivered November 25, 1929.

*F. H. Moore, James B. McDonough* and *George W. Dodd,* for appellants.

*Edward J. White* and *Thomas B. Pryor,* for appellees.

MEHAFFY, J. The appellants brought suit in the chancery court of Sebastian County against the appellees, praying for a mandatory injunction enjoining the appellees from further refusing to receive and switch cars, as set forth in the complaint, and compelling them to receive, switch and deliver cars within the city of Fort Smith, as the Fort Smith Suburban Railway Company was obligated to do under its franchise and charter. It also asked for the sum of $37.80 damages.

The Kansas City Southern Railway Company is a common carrier, organized under the laws of the State of Missouri, owning and operating a line of railroads extending through several States, and has a station and lines of railroad within the city of Fort Smith, Arkansas. It receives and transports goods, wares and merchandise in intrastate and interstate traffic, and transports from other States and from other parts of Arkansas goods, wares and merchandise for delivery within the city of Fort Smith, Arkansas.

The Missouri Pacific Railroad Company is also engaged in interstate and intrastate traffic and transportation, and it also receives and transports goods, wares and merchandise in intrastate and interstate traffic, and transports from other States and from parts of Arkansas goods, wares and merchandise for delivery in the city of Fort Smith.

The Fort Smith Suburban Railway Company is a corporation organized under the laws of the State of Arkansas, and has its principal place of business within the city of Fort Smith, Arkansas, and owns and operates a railroad approximately six miles in length, and it was organized for the purpose of constructing, maintaining and operating a switch line, generally known as a switching line railroad, extending through the city of

Fort Smith, and the principal purpose was the construction of a switching line railroad to receive and transport carload freight arriving in Fort Smith from the point of its reception in the city of Fort Smith to the point of its destination in said city of Fort Smith. It was organized and constructed for switching purposes. It secured the right-of-way for the purposes named, and was granted the right to lay its track in the city of Fort Smith by an ordinance of said city, § 6 of which reads as follows:

"The city council reserves to itself full power and authority to control and regulate the speed of all cars, engines, trains and other rolling stock, and to pass, enact and enforce such ordinances as they may see fit to protect the property, secure the lives, safety and welfare of its inhabitants; also reserves the right to lay sewer pipes, water mains, etc., and overhead wires under and over their tracks; (provided that said railway company shall receive and deliver all cars that may be offered to it by other railroads, individuals or corporations, and that the charges for such handling, known as switching charges, shall not exceed two dollars per car)."

The Missouri Pacific Railroad Company, through stock ownership, controls and operates the Fort Smith Suburban Railway Company, which receives and switches all cars for the Missouri Pacific Railroad Company in carloads or merchandise and articles moving in interstate commerce, and transports the same to points within the city of Fort Smith, and refuses to receive, switch and deliver the cars handled by the Kansas City Southern Railway Company, and it is alleged in the complaint that the appellees received, switched and delivered cars at Kinkead Spur, on the Fort Smith Suburban Railway Company, for the Missouri Pacific Railroad Company, and refused to receive carloads of merchandise and articles transported to the same points within the city of Fort Smith of the Kansas City Southern Railway Company. It is alleged in the complaint that there are a number of other ordinances of the city of Fort Smith, and other

shipments of the Kansas City Railway Company have been refused at places where they receive, switch and deliver cars for the Missouri Pacific.

The appellees filed a demurrer as follows: (1). That said complaint does not state facts sufficient to constitute a cause of action against the defendants; (2) that said complaint does not state facts sufficient to constitute a cause of action against the defendants within the jurisdiction of this court; (3) that the complaint shows that the shipments involved are interstate, the cars being shipped from Dewey, Oklahoma, to Fort Smith, Arkansas, and therefore are governed by the rules and regulations of the Interstate Commerce Commission under the provisions of the Interstate Commerce Act, as amended; (4) that the Interstate Commerce Commission has exclusive jurisdiction of the matters alleged in the complaint herein.

The court below sustained the demurrer and dismissed the complaint, and, to reverse the decree of the court in sustaining the demurrer and dismissing the complaint, appellants have prosecuted this appeal.

The appellee's first ground of demurrer is that the complaint does not state facts sufficient to constitute a cause of action against the defendants. The demurrer, of course, admits the truth of the allegations in the complaint. Appellee quotes from I. C. C. Reports, vol. 24, 292, as follows:

"There is no industry located upon the track in question at Fort Smith. It is not denied that it is a team track, and therefore the tariff referred to had no application to the service demanded."

The complaint, however, in the instant case states that Kinkead Spur is a spur track on the line of the Fort Smith Suburban Railway Company, at which point the appellees deliver carload freight. The complaint also states that the said Suburban, during that time, received and switched all cars moving over the Missouri Pacific Railroad Company; it performed the service fully for

the Missouri Pacific, but refused to perform it for the Kansas City Southern. The allegations above set out, together with the other allegations in the complaint, are sufficient on general demurrer.

"This court has frequently held that, in testing the sufficiency of a pleading by general demurrer, every reasonable intendment should be indulged to support it; and that, where facts are defectively stated, the remedy is by motion to make more definite and certain, and not by demurrer." *Driesbach* v. *Beckham,* 178 Ark. 816, 12 S. W. (2d) 408; *Tolbert Bros. & Co.* v. *Molinder,* 178 Ark. 888, 12 S. W. (2d) 780; *Wright* v. *Lake,* 178 Ark. 1184, 13 S. W. (2d) 826; *Choctaw, Okla. & Gulf Ry. Co.* v. *Doughty,* 77 Ark. 1, 91 S. W. 768.

The next ground of demurrer is that the complaint does not state facts sufficient to constitute a cause of action against the defendant within the jurisdiction of this court. The complaint alleges a continuing wrong, and, if the allegations in the complaint are true, there would necessarily be a multiplicity of suits, and therefore the chancery court had jurisdiction. If the suit was improperly brought in equity, the defendant might have filed a motion to transfer to the law court, and, if the court sustained the demurrer because the suit should have been brought in the circuit court, instead of the chancery court, it should have transferred the cause to the proper court, instead of dismissing it. Section 1041, Crawford & Moses' Digest.

"The demurrer should not have been sustained and the complaint dismissed for the error of the complaint as to the kind of action, but the court should have treated the demurrer as a motion to transfer to equity, and the action should have been transferred to the chancery court." *Grooms* v. *Bartlett,* 123 Ark. 255, 185 S. W. 282.

Appellee's grounds for demurrer numbers three and four raise the question that the Interstate Commerce Commission has exclusive jurisdiction of the matters alleged in the complaint, and that these shipments are in-

terstate shipments, and are governed by the rules and regulations of the Interstate Commerce Commission under the provisions of the Interstate Commerce Act as amended.

Appellee first calls attention the case of *Spratlin* v. *St. Louis Southwestern Ry. Co.*, 76 Ark. 82, 88 S. W. 836, to support the contention that a State statute or a municipal ordinance in conflict with the Interstate Commerce act is invalid. There is, however, in this case no question of any conflict. The ordinance of the city of Fort Smith requires the Suburban Railway Company to receive and deliver all cars that may be offered it by other railroads, individuals or corporations. There is not only no conflict between this provision of the ordinance and the Interstate Commerce act, but this is exactly what the interstate act itself requires of the switching railroad company.

There is no contention that the Suburban Railway Company is not a railroad company and a common carrier, but it was organized for the special purpose of receiving, switching and delivering cars in the city of Fort Smith, and this it must do under the Federal statute. And the question is not one for the exercise of administration on the part of the commission, but is a question of law for the courts. The Fort Smith Suburban Railway Company is not an extension of the Missouri Pacific's railroad or a branch of that railroad, nor is it a spur of the Missouri Pacific Railroad Company. It is not an industrial, team or switching track of the Missouri Pacific Railroad Company, but it is an independent corporation organized for the purpose of switching cars, and, being a common carrier and public utility, it must treat all alike. If Kinkead Spur is a place for the delivery of freight, as alleged in the complaint, then freight must be received by the Fort Smith Suburban Railway Company offered from any of the railroads. And, whether the Fort Smith Suburban Railway Company is operated by the Missouri Pacific or not, whoever oper-

ates it is bound to receive shipments of freight from all persons alike.

The question of rates, fares, charges or the value of services rendered is not involved in this case. These questions are, under the Federal statute, questions for the Interstate Commerce Commission. Of course the Fort Smith Suburban Railway Company would not be required to receive cars at a place other than a depot or switch or track provided for the purpose, but the allegations of the complaint are that the Fort Smith Suburban always receives and handles the cars of the Missouri Pacific, and refuses to receive and handle the cars of the Kansas City Southern. Appellee is correct in stating that a railway company has the right to earn a fair return on the value of the property which it devotes to the public service, but, as we have already said, there is no question of remuneration or fares involved in this case.

It would serve no useful purpose to discuss or refer to the many authorities cited and relied on by the parties, for the reason that the cases relied on by appellee are cases where the facts are wholly unlike the facts alleged in the complaint in this case. The Fort Smith Suburban is not a terminal, branch, or a spur of the Missouri Pacific, and is not operated as a part of the Missouri Pacific system. It is an independent corporation, and it is wholly immaterial who owns the stock. As long as it operates as a switching railroad, it must serve all parties alike.

As said by the court in the case of *Missouri Pacific Railroad Company* v. *Larabee Mills*: "Whenever one engages in that business, the obligation of equal service to all arises; and that obligation, irrespective of legislative action or special mandate, can be enforced by the courts. Neither is there any significance in the absence of a special contract between the Missouri Pacific and the mill company. * * * There is no suggestion that the amount of this charge was changed in favor of any other shipper, and, so long as that was so, it was the

charge which the Missouri Pacific was entitled to make for cars transferred at the instance of the mill company. If in the future a change is made in behalf of shippers generally, undoubtedly that change can be made operative in respect to the mill company. Indeed, all these questions are disposed of by one well-established proposition, and that is that a party engaging in the business of a common carrier is bound to treat all shippers alike, and can be compelled to do so by mandamus or other proper writ." *Missouri Pac. Ry. Co.* v. *Larabee Mills*, 211 U. S. 612, 29 S. Ct. 214.

The appellee, however, argues that the case of the *Missouri Pac. Ry. Co.* v. *Larabee Mills* presented a different question; that a different question was involved in that case to that in the case at bar. It says that there is no allegation in the complaint that any industry is located upon what is termed the Kinkead Spur. It is true that the complaint does not allege any industry, but it does allege that the Kinkead Spur is a place where the Suburban receives cars, and that it receives all the Missouri Pacific cars there, and refuses to receive the Kansas City Southern. As we have already said, this is sufficient on demurrer.

It is further contended that the above-mentioned case was decided by the Supreme Court of the United States before the later amendments to the Interstate Commerce Act, and before the passage of the transportation act. But appellee itself calls attention to § 3 of the Interstate Commerce Act, which provides:

"Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such

common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business.''

The Missouri Pacific and Kansas City Southern are both railroad companies, interstate carriers, and the Suburban line is located in the city of Fort Smith, organized for the purpose of switching. It is a switching railroad, and, while it is a common carrier, it is not engaged in the same business as either of the others, but is engaged in switching exclusively.

The whole question is summed up in the statement in the case of *Missouri Pac. Ry. Co.* v. *Larabee Mills, supra,* and there could be no useful purpose served in extending this opinion or commenting on the authorities relied on by the parties. It follows from what we have said that the decree must be reversed, and the cause will be remanded, with directions to overrule the demurrer. It is so ordered.