FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* COWAN.

Opinion delivered July 6, 1931.

76

78

*Sam Costen* and *Wils Davis,* for appellant.

*Nelson & Crawford, Roy E. Nelson* and *Harrison, Smith & Taylor,* for appellees.

HART, C. J., (after stating the facts). Appellant contends that $10,000, the amount which it paid into court as surety for Cowan, is the full amount of its liability, and that the court erred in holding that the $5,000, the proceeds of the Montague bond, was subject to the claims of the various plaintiffs superior to the right of appellant to offset its judgment against Cowan against it. Cowan contends that he should have judgment against appellant, to the extent of Montague's shortage during the years 1923 and 1924, which is shown by the master's report to be $3,250.61, and also for the full amount of the shortage of 1925, which exceeds the amount of the bond for which appellant would be liable as surety for Montague.

The record shows that Montague was appointed deputy clerk by Cowan when he first assumed the office of clerk in 1923, and continued as such deputy throughout the first term. Appellant signed his bond in the sum of $5,000 to Cowan, conditioned for the faithful performance of the duties of his office, and that he would pay over to his successor the amounts of money collected by him in his official capacity. When Cowan

entered on his second term in 1925, Montague continued as his deputy, and Cowan paid the premium to appellant of $25, continuing the former bond in force, conditioned for the faithful performance of Montague's duties as deputy clerk and for turning over the money collected by him in his official capacity. Montague continued to act as such deputy clerk until some time in the fall of 1925, when an examination of his books showed that he was short in a sum amounting to something over $11,000.

The public moneys in the hands of Cowan as clerk belonged to the various claimants, and the clerk was under a trust or a public duty to pay the same to them. The money collected by him belonged to the public, and he was charged with the duty of delivering it to the proper authorities entitled to receive it. The same rule would apply to the deputy clerk. The public moneys collected and held by him belonged to the county or to the proper authorities entitled to receive the same. The clerk and his deputy were not mere debtors to the county and to the improvement districts whose money was in their hands, but they sustained the relations of trustees. The money collected by them was impressed with a trust in favor of the county and improvement district officers.

As surety of Montague on his official bond to Cowan, appellant cannot rise any higher than its principal in right, and must stand in his shoes and take his remedies with all the equities and limitations in the premises. If the money misappropriated by Montague belonged to these improvement districts, they were entitled to receive it and to collect it from him as well as from Cowan. Montague could in no sense escape liability from misappropriation of the money because he had executed a bond to pay it back to Cowan. If the money belonged to the public, those in authority were entitled to recover it into whosever hands it could be traced, provided it could be shown that they had notice that it was public money. Montague collected the funds as deputy clerk, and, of course, had actual knowledge that they belonged to the public. Appellant signed his bond as surety to Cowan

for the faithful performance of his duties, and also conditioned that he should pay back the money to his successor or to those entitled to it. Thus the very terms of the bond signed by appellant show that it was liable for any misappropriation of the money by Montague. As we have already seen, appellant stands in the shoes of Montague and can acquire no greater rights or equities against those entitled to the money than he had. Hence neither appellant nor Cowan would be entitled to any offset against Montague for the funds he misappropriated.

If the moneys could be traced into the hands of any third person who had knowledge that they were public moneys when received by such third person, then appellant, as surety on the official bond of Montague, would be subrogated to any rights and entitled to recover the same from such third person. *Boone County* v. *Byrum,* 68 Ark. 71, 56 S. W. 532; and *Carroll County Bank* v. *Rhodes,* 69 Ark. 43, 63 S. W. 68.

The principle, as recognized in these cases, is that no right of subrogation would exist until the surety had paid the money into the proper public authorities. Hence Cowan would have no right to set-off against Montague, nor would appellant as surety have any right of subrogation until the money which was due by Montague to the public authorities had been paid by Cowan or by appellant as his surety. In holding the appellant liable as surety on Montague's bond as deputy clerk, the chancery court only held appellant to the discharge of the obligation of its contract in the premises. It was only required to do and perform the covenant of its bond for executing which it had received a stipulated compensation.

It is insisted also that the court erred in consolidating the cases, and that the state of the pleadings did not warrant the decree entered of record by the chancery court. We do not agree with counsel in this contention. Equity abhors a multiplicity of suits and adjusts the rights of parties without circuity of action, whenever it is feasible to do so. This principle of equity jurisprudence is so well settled that we need cite only the follow-

ing cases: *State* v. *Atkins,* 53 Ark. 303, 13 S. W. 1097; *Bledsoe* v. *Carpenter,* 160 Ark. 349, 254 S. W. 677; *Martin* v. *State,* 171 Ark. 576, 286 S. W. 873; and *K. C. Sou. Ry. Co.* v. *Ft. Smith Suburban Ry. Co.,* 180 Ark. 492, 22 S. W. (2d) 21.

Then, too, the record shows that the parties understood that all their rights were being settled and adjudicated in one suit. Evidence was adduced by each of the parties to establish his contentions; and, under another settled rule of equity jurisprudence, the pleadings will be considered amended to conform to the proof. *McConnell* v. *Bourland,* 175 Ark. 253, 299 S. W. 14.

We now come to the cross-appeal of Cowan. On this branch of the case, but little need be said. The court held appellant as surety liable on the bond executed on the 30th day of December, 1924, for the period beginning January 1, 1925, and ending December 31, 1925. It makes no difference whether this is called a new bond or a continuation certificate. The premium demanded by appellant was paid by Cowan. The instrument itself shows that it was to be subject to all the conditions of the former bond. One of them was that Montague should pay to his successor all moneys received by him as such deputy clerk. The amount of his shortage was considerably more than $5,000. In fact, it was more than $11,000. The continuation certificate or new bond will be considered according to its terms and not according to the label on it. Therefore we think the chancellor correctly held that appellant was liable as surety on it as a new bond.

We are of the opinion, however, that the court erred in not finding appellant liable as surety for Montague's shortage under the first bond, which was for the years 1923-1924. His shortage for this time is reported by the master to be $3,250.61, and we think the chancellor erred in not holding the appellant liable as surety for this amount to the extent which was necessary to pay the claims of the various claimants and the costs of the action.

It follows that the decree on the appeal will be affirmed, and on the cross-appeal it will be reversed with directions to enter a decree in accordance with the views expressed in this opinion relating to the cross-appeal. It is so ordered.