MURPHY *v.* MARSHALL.

4-6666                                        159 S. W. 2d 741

Opinion delivered March 9, 1942.

*H. M. Cooley* and *Archer Wheatley,* for appellant.

*John W. Brawner* and *J. G. Waskom,* for appellee.

SMITH, J.   On or about January 1, 1925, the incorporated town of Lepanto was organized into an improvement district for the purpose of furnishing water to that municipality, and on the same date a second district was organized to furnish sewerage facilities to the municipality.   Each district embraced the entire town, and each

had its own board of commissioners. About July 1, 1939, the affairs of both improvement districts were placed in the hands of a single board entitled Board of Public Utilities of the Incorporated Town of Lepanto. The members of the boards of commissioners of the two improvement districts were displaced and a different personnel took charge of the Board of Public Utilities.

After taking office the new Board caused an audit of the finances of the two improvement districts from July 1, 1937, to July 5, 1939, to be made, from which audit it appeared that appellee, Mabel Marshall, was indebted to the two districts in the total sum of $530.07. Mrs. Marshall had been secretary of both improvement districts and the tax collector for each of them.

After the shortage was discovered, a complete audit of the finances of both districts was made, which disclosed a much larger shortage, the items of which will later be discussed.

Mrs. Marshall lived with her daughter Gertrude who for a period of years had made contributions to her mother's support. Gertrude married Cantrell May 7, 1939, and as a wedding present Mrs. Marshall gave her daughter a deed to her home in the town of Lepanto and to a farm of eighty acres. Mrs. Marshall had acquired the land through her husband, Gertrude's father. This deed was not filed for record until September 13, 1939. On the date of the execution and delivery of this deed the first audit had not been made.

The purpose of the audit was to set up a new bookkeeping system, as the books had previously been irregularly kept. Indeed, Mrs. Marshall testified that no books had been furnished her for keeping the accounts of the two districts of which she was secretary and for which she had collected the taxes.

It was prayed that the deed from Mrs. Marshall to her daughter be canceled as having been executed in fraud of the new Board as a creditor. This is very strenuously denied by both Mrs. Marshall and her daughter. On the contrary, Mrs. Marshall insists that she was not indebted to either of the improvement districts, not

even for the $530.07 which she paid. She testified that she paid this sum only because she was sick and unable to go through her administration of her offices of secretary and collector, which involved many transactions beginning in 1925, and that she paid the sum in full acquittance of all demands' against her for the benefit of both of the improvement districts. In addition, Mrs. Marshall pleaded the statute of limitations.

It does not definitely appear which of these pleas was sustained; but it is fairly inferable that the decree dismissing the complaint as being without equity was based upon the finding that Mrs. Marshall was not indebted to either district in any sum.

As has been stated, this suit is predicated upon the theory that Mrs. Marshall is short in her accounts, and, in arriving at what is claimed to be the amount of the shortage, the auditor proceeded upon the theory that appellee was entitled to a credit of only $25 per month for her services as secretary of the two districts, with an additional salary of $25 per month for four months while engaged in collecting taxes, making a total salary of $400 per year.

It appears that Mrs. Marshall's salary, whatever it may have been, was paid in full to April 30, 1926. Thereafter it was paid at irregular intervals, and at times when the districts had funds available for that purpose. Generally, the revenues of the districts were used in paying maturing bonds, interest thereon and operating expenses, so that appellee's salary was not paid regularly, although she took credit therefor and was paid when funds were available. Mrs. Marshall served the two districts from the date of their organization to July 9, 1939, and the amount of her salary from April 30, 1926, to July 9, 1939, is the principal question of fact in the case.

She was originally employed at a salary of $25 per month, which was increased by $25 per month for four months while taxes were being collected. But the business and finances of both districts had become much involved, taxes were paid at irregular intervals and by

many landowners not at all. Numerous delinquencies occurred, and there were many foreclosures of the districts' taxes, with sales to the districts for a lack of bidders. Commissioners of the old districts testified that it was their policy to offer inducements to property owners to redeem their lands so that they might be returned to the tax books. There was no fixed or limited time within which taxes should be paid. The tax books were kept continuously open. Mrs. Marshall was furnished no office, and used her home for that purpose. She became the *factotum* for both districts. Complaints about service were made to her, and much of her time was occupied in remedying them. The commissioners directed Mrs. Marshall to place a telephone in her office at the expense of the district.

Unquestionably, when Mrs. Marshall was first employed, her salary was fixed at $25 per month; but equally unquestioned is the fact that it was soon raised $25 additional for four months, during which time the taxes were supposed to be collected; and we think the testimony establishes very clearly that it was agreed that as the tax books were kept open all the time she should have an additional $25 per month for the entire year. Such was the testimony of a majority of the members of both old boards, and no member of either of the old boards definitely disputed that fact.

As has been said, this is the principal item in controversy as the auditor's report was based upon the assumption that Mrs. Marshall was entitled to an additional $25 credit for only four months each year. The commissioners of the improvement districts testified that they held regular monthly meetings at which time Mrs. Marshall submitted reports of her collections and disbursements which showed that she was charging the $25 per month for the entire year, and her reports were approved.

A commissioner who had served as such during nearly the whole course of Mrs. Marshall's employment, testified that all kinds of compromises were made with the taxpayers to induce them to pay taxes. Many deeds were executed to persons who had permitted their

lands to be sold to the districts under decrees foreclosing the lien for delinquent taxes. Mrs. Marshall paid notary fees on these deeds amounting to $150. The auditor charged Mrs. Marshall in his report with the total recited consideration of all these deeds.

It appears that through private subscription a deep well had been drilled which the district had taken over, and in several instances credits for taxes were allowed to the extent of the contributions to the drilling of the well made by owners of lands in the district. Mrs. Marshall makes the showing that considerations recited in the deeds amounting to $708.22 were not paid to her.

However irregular this proceeding may have been, it was authorized by, reported to and approved by the commissioners as the transactions occurred; and we think Mrs. Marshall should have credit for these items.

Based upon the audit, the plaintiff boards of commissioners prayed judgment against Mrs. Marshall for $4,564.67. Of this total $3,350 is for excessive salary, which, for reasons herein stated, is an erroneous charge, as Mrs. Marshall drew only the salary which the commissioners authorized her to charge.

According to the audit, Mrs. Marshall is charged with tax collections amounting to $102,151.67, and is shown to have accounted for $101,327.10, leaving a balance unaccounted for of $824.57. The audit charged Mrs. Marshall with collections from water revenue of $6,848.99, and credits her with $6,458.79, accounted for, leaving unaccounted for a balance of $390.20.

The correctness of these two items, totaling $1,214.37, does not appear to be seriously questioned; but Mrs. Marshall attempts to explain that she disbursed a large amount for the benefit of the districts with the approval of the commissioners. Her explanation is not convincing, except that we feel assured she did not intend to embezzle or fail to account for money which had come into her hands.

We conclude that she should be charged with these two items totaling $1,214.77, against which she should have credit for the $530.07 paid to the auditor, and that

judgment should be rendered against her for the difference, or for $684.70.

Now, the statute of limitations which Mrs. Marshall pleads does not apply because her account with the districts was in the nature of an account current, and the suit was brought as soon as the shortage was discovered. *Wright* v. *Lake*, 178 Ark. 1184, 13 S. W. 2d 826; *Fidelity & Deposit Co.* v. *Cowan*, 184 Ark. 75, 41 S. W. 2d 748.

Nor do we think the payment of $530.07 to the auditor constituted an accord and satisfaction. The audit which disclosed the shortage was only partial, and covered only the period from July 1, 1937, to July 5, 1939. After giving the check Mrs. Marshall suspended its payment, but later ordered it paid, and the testimony does not sustain the contention that the check was given or accepted in full settlement of any shortage which might exist. Indeed, the testimony is to the effect that it was because of the alleged shortage found that the complete audit was later made.

Having reached the conclusion that Mrs. Marshall is indebted to the districts in the sum stated, we must also hold that the deed from her to her daughter was in fraud of the districts as her creditors. This deed conveyed Mrs. Marshall's home in Lepanto and an improved eighty-acre farm, all of the total value of fifteen thousand dollars, or more, without consideration except love and affection. This conveyance denuded Mrs. Marshall of all her property, and left her impervious to an execution.

While the deed was apparently acknowledged and dated May 7, 1939, as a wedding gift, it was not recorded until September 13, 1939. The officer who took the acknowledgment was not called as a witness.

It is provided by § 6071, Pope's Digest, that "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, . . . made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void."

992

While the deed from Mrs. Marshall to her daughter antedates the partial audit, we think it appears from the voluminous record in the case that Mrs. Marshall must have known that the very loose and irregular manner in which the affairs of the districts had been conducted and their revenues disbursed would be investigated when the old boards which had employed her had been succeeded by a new board which had taken over the affairs of both old districts. However, the deed to her daughter was not filed for record until September 13, 1939, at which time the general audit was in progress.

It is provided by § 6075, Pope's Digest, that "No conveyance required by the provisions of this act to be recorded shall be valid or binding, except between the parties and their legal representatives, until the same shall have been deposited in the recorder's office for record; nor even then if shown to be made with intent to defraud prior creditors or purchasers, but shall be void against such prior creditors or purchasers."

Mrs. Marshall's deed to her daughter must, therefore, be held fraudulent and void against the demand here allowed, and the decree of the court below will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Holt is of opinion that the decree should be affirmed and, therefore, dissents.