DRAINAGE DISTRICT No. 7 OF POINSETT COUNTY *v.* CITIZENS BANK OF JONESBORO.

4-6966                              170 S. W. 2d 60

Opinion delivered February 8, 1943.

*House, Moses & Holmes,* for appellant.

*Lamb & Barrett,* for appellee.

McFADDIN, J. Appellant district and the commissioners thereof filed suit in Craighead chancery court against appellee bank seeking judgment for $5,692.48. From an adverse decision, there is this appeal.

On December 10, 1941, and for several years prior thereto, and for sometime thereafter, James A. Smith was the clerk of the circuit court and the chancery court of Poinsett county, Arkansas; and as said clerk he was the collector of delinquent taxes of Drainage District No. 7 of Poinsett county. On December 11, 1941, Smith received from Landers' Gin a check dated December 10, 1941, drawn on the Bank of Marked Tree, Arkansas, payable to the order of "Jas. A. Smith, clerk" for the sum of $5,692.48, and bearing the notation "for 1939 D. D. No. 7 tax." This check was delivered to Smith in his official capacity as collector of the delinquent drainage tax, and he issued therefor, on the regular form, the certificate of redemption of Drainage District No. 7 of Poinsett county to Landers Bros. for the redemption of certain lands for the delinquent drainage taxes of the said district for the year 1939. James A. Smith did not pay the said $5,692.48 or any part thereof to the Drainage District No. 7 or to any bank designated as its depository, and the district never received the said amount or any part thereof.

On December 11, 1941, James A. Smith took the said check in person to the appellee bank and indorsed it "Jas. A. Smith, clerk." The Citizens Bank of Jonesboro was not a bank designated as a depository by the County Depository Board of Poinsett county (as provided by § 4327 of Pope's Digest), neither was the Citizens Bank of Jonesboro a bank designated as a depository for the funds of the appellant drainage district (as provided by § 4328 of Pope's Digest). The teller of the bank received the check as a collection item and issued to

James A. Smith, clerk (under date of December 11, 1941) a regular form of deposit slip, placing on the slip opposite the amount, the words, "For Collection" and also placing on the deposit slip the words "Marked Tree, Landers' Gin." The bank opened up a ledger page in the name of "James A. Smith, clerk," and showed the item on the ledger page as a deposit under date of December 11, 1941. The ledger page carried the typewritten notation "For Collection."

Mr. Gerald McGhee, the assistant cashier of the bank, overheard Smith inform the teller that he (Smith) wanted the money in thousand dollar bills, so Mr. McGhee called Smith back into the bank and told him that the bank did not at that time have bills in that denomination. Smith told the said bank cashier to send the check down to Marked Tree and get the money; and Smith asked how many days it would take before he could get the money, and was advised that it would be about three days. In the same conversation, Smith cautioned the bank cashier that he wanted it strictly understood that no one was to know about this check and that no checks were to be drawn against it and that he wanted the check sent down to Marked Tree and that he wanted the money, and he asked the cashier to secure thousand dollar bills in which to pay him in currency the proceeds of the check. The appellee bank sent the check direct to the Marked Tree bank for collection and remittance showing that the item was indorsed by "Jas. A. Smith" omitting the word "clerk." The Bank of Marked Tree remitted to the Citizens Bank of Jonesboro in the form of an exchange and charged the Citizens Bank $8.55 as exchange. The Citizens Bank ordered from a Memphis bank five one-thousand-dollar bills; and on December 15, 1941, Smith went to the Citizens Bank of Jonesboro and signed a check for $5,683.92 (representing the full amount less the Marked Tree exchange). This check was signed "Jas. A. Smith, clerk," and he received therefor five one-thousand-dollar bills and the balance in other denominations of currency. Mr. McGhee personally handled this final payment to Smith; and Mr. McGhee, called as a witness by the bank, testified in part as follows:

"Q. Would your bank have accepted that check or its proceeds as a deposit from Smith? A. No, sir. Q. Why? A. Well, in the first place—you mean personally? Q. Either way. A. Personally we would not accept a deposit from Jimmy Smith on account of his reputation for bad checks and in the second place I did not know that we was the designated depository. Q. You saw the original check at the time it was deposited in the bank? A. Yes, sir. Q. You noticed that it was made out to Jimmy Smith, clerk? A. Yes, sir. Q. You noticed that it was marked '1939 taxes, Drainage District No. 7'? A. I don't recall that. Q. You noticed that it was drawn by Landers Gin? A. Yes, sir. Q. You paid the money out directly to Mr. Smith? A. Yes, sir. Q. Some three or four days after it was deposited? A. Yes, sir. Q. You heard Mr. Smith. He said to you, 'I want no one to know about this.' You heard him say that? A. Yes, sir."

Under the facts in this case, we reach the conclusion that the bank is liable, whether the case be viewed from the rules of trusts, or from the bank's defense that it did not accept the check as a general deposit. On either theory the bank is liable.

## 1.   The Rules of Trusts.

In the case of *Fidelity & Deposit Company* v. *Cowan*, 184 Ark. 75, 41 S. W. 2d 748, this court held that public moneys in the hands of a clerk were under a trust, and that the clerk, in receiving the money, was a trustee. This case answers the appellee's argument that the money in Smith's hands was not public money. It is clear that Smith as clerk committed a breach of trust.

In Scott on Trusts, § 324, the rule is stated: "Where a trustee deposits trust funds in a bank and commits a breach of trust either in making the deposit or in withdrawing the funds, or in misappropriating the funds after withdrawal, the question arises whether and under what circumstances the bank incurs a liability for participation in the breach of trust. . . . If the bank has notice that the making of the deposit, even though it is made in the name of the trustee as such, is a breach of trust, it is liable for participation in the breach of trust

and is chargeable as a constructive trustee of the money so deposited. . . . Where a trustee deposits trust funds in a bank, and the bank permits him to withdraw the funds with notice that he is committing a breach of trust, it is liable for participation in the breach of trust.''

Many cases are cited in the text to sustain the statements. We list a few of these: *Farmers' Bank of Alamo* v. *U. S. F. & G. Co.,* 28 F. 2d 676; *Martin* v. *First National Bank,* 51 F. 2d 840; *American Surety Co.* v. *Waggoner National Bank,* 83 F. 2d 99; *Lowndes* v. *City National Bank,* 82 Conn. 8, 72 Atl. 150, 22 L. R. A., N. S., 408; *Miami County Bank* v. *State,* 61 Ind. App. 360, 112 N. E. 40. See *American Nat. Bank* v. *Fidelity & Deposit Co.,* 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 669; Ann. Cas. 1914B, 677.

Similarly if the bank receives securities from a depositor and returns them to him knowing that he holds them as a fiduciary and intends to misappropriate them, the bank is liable. *Manhattan Bank of Memphis* v. *Walker,* 130 U. S. 267, 9 S. Ct. 519, 32 L. ed. 959.

The general rule was recognized in the case of *Helena* v. *First National Bank,* 173 Ark. 197, 292 S. W. 140, where Chief Justice HART, speaking for the court said: ''The general principle governing the bank's liability is that the officers of the bank, who know that a fund on deposit is a trust fund, cannot appropriate that fund to the private benefit of the bank, or, where charged with notice of the conversion of the trustee, participate with him in appropriating it to his own use, without being liable to refund the money, if the appropriation is a breach of the trust. *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518, and *Blanton* v. *First National Bank of Forrest City,* 136 Ark. 441, 206 S. W. 745.''

In the Helena case, the facts showed that the bank had no notice of the conversion by the trustee, and, therefore, was not liable. But in the case at bar, the facts show that the appellee bank had ample notice of the breach of trust by Smith. Act 21 of 1935, as found in § 4327, *et seq.,* of Pope's Digest, provides that county

boards shall designate banks for depositories of county funds and commissioners of improvement districts. shall designate depositories for their respective districts. The appellee bank knew Smith personally, and knew that he. had a record for bad checks, and knew that appellee bank was not designated as a depository of public funds, and knew, under the case of *Fidelity & Deposit Company* v. *Cowan,* 184 Ark. 75, 41 S. W. 2d 748, that the clerk was a trustee of public funds. The check showed on its face that it was made to Smith as clerk and that it was for the payment of taxes. Smith's attitude in paying the Jonesboro Bank $8.55 to collect an item on a bank in his own county was a suspicious circumstance. Smith's caution of secrecy and Smith's desire to receive the money in large bills—all these matters put the appellee bank on notice. It had four days to investigate, and yet the record is silent as to any investigation that the bank made based on this notice. The testimony of the assistant cashier of the bank, who personally handled this item, shows that there was something suspicious about the entire transaction. We reach the conclusion that the bank permitted Smith to withdraw the funds with notice that he was committing a breach of trust, and so the bank is liable for participation in the breach of trust.

### 2. The Bank's Defense That It Did Not Accept the Check as a General Deposit.

The appellee bank claims that it did not receive the check as a regular deposit, but received it only for collection, and that the rule in the preceding portion of this opinion does not apply, since on a collection item the bank is an agent and not a debtor. We think this defense is a distinction without a difference, and that the distinction is immaterial. The bank had notice of facts sufficient to cause it to make an investigation, and any investigation would have disclosed Smith's breach of trust. The bank allowed itself to be a conduit through which the thief carried his booty; and, therefore, the bank is liable.

Furthermore, the bank's defense is without merit. The general rule is that ''one depositing a check or other

paper for collection, ordinarily creates the relation of principal and agent between himself and the bank, although after collection the funds will, as a rule, become a general deposit creating the relationship of creditor and debtor between depositor and bank." 9 C. J. S. 583. In Zollmann on Banks and Banking, § 5615, cases from many jurisdictions were cited to sustain the rule: "The agency created when paper is placed for collection ordinarily continues until the collection is made. It is changed to a debtor relation when the collecting bank acquires the title to the money collected." In the case of *Farmers' & Merchants' Bank of Bearden* v. *The State, for the use of Calhoun County,* 180 Ark. 994, 23 S. W. 2d 624, this rule was recognized in the following language: "As we have seen, the bank was the agent for Goodwin in the collection of the check, and yet that relation ceased when the money on the check was received, and the account of Mrs. Goodwin credited with an equal amount."

In the present case, we point out that: the bank issued a deposit slip to Smith; opened a ledger page for Smith; credited the item on its original ledger page; charged the collection charge of $8.55 against the full sum of $5,692.48 on the ledger page; took a regular check from Smith, drawn on itself, payable to "Cash" for the balance of $5,683.93; received the check from Smith on December 11 and paid out to Smith on December 15; and in the meantime, the Marked Tree bank had remitted in Memphis exchange and the appellee bank had ordered five bills of one-thousand-dollar denomination each. These facts show that the principal and agency relationship ceased when the collection was made. The bank took title to the Marked Tree exchange and converted it to currency and treated it as a deposit.

In the case of *Fidelity & Deposit Company* v. *People's Bank,* 44 F. 2d 19, the Circuit Court of Appeals of the Eighth Circuit said: "In the instances where the banks received from the county treasurer county funds and placed them on deposit when they were not legal county depositories, they became trustees *ex maleficio. Merchants' Nat. Bank* v. *School Dist.,* (C.C.A.) 94 F.

442

705; *Bd. of Commrs.* v. *Strawn,* (C.C.A.) 157 F. 49, 15 L. R. A., N. S., 1110; *U. S. F. & G. Co.* v. *Union Bank & Trust Co.,* (C.C.A.) 228 F. 448; *American Sur. Co.* v. *Jackson,* (C.C.A.) 24 F. 2d 768; *Fiman* v. *State of South Dakota,* 29 F. 2d 776 (C.C.A. 8); *Compton* v. *Farmers' Tr. Co.,* 220 Mo. App. 1081, 279 S. W. 746. As such their absolute liability could be relieved only by restoring the funds to the county. The banks in becoming trustees *ex maleficio* lost their right to presume that the county treasurer in withdrawing the funds would make proper disposition thereof. Perry on Trusts, (7th Ed.), Vol. 1, § 245; *Central Stock & Grain Exchange* v. *Bendinger,* (C.C.A.) 109 F. 926, 56 L. R. A. 875; *U. S. F. & G. Co.* v. *People's Bank,* 127 Tenn. 720, 157 S. W. 414; *Glasgow* v. *Nicholls,* 124 Wash. 281, 214 P. 165, 35 A. L. R. 419.''

In this case the United States Supreme Court refused a petition for a writ of certiorari, 282 U. S. 901, 75 L. Ed. 793, 51 S. Ct. 213. In the case of *State* v. *Citizens National Bank,* 100 Ind. App. 501, 193 N. E. 389, the Appellate Court of Indiana had before it a similar case, and reached the same conclusion that we have reached here.

It follows that the chancery court was in error in failing to award judgment to the appellant district and its commissioners, and the decree is reversed and judgment is rendered here in favor of the district and its commissioners and against the appellee bank for the sum of $5,692.48 with interest at six per cent. from May 22, 1942, (the date of the filing of the complaint herein) until paid, and for all costs.