MACK *v.* MARVIN.

4-8188

202 S. W. 2d 590

Opinion delivered May 19, 1947.

Rehearing denied June 23, 1947.

716

*Charles D. Atkinson* and *Chas. W. Atkinson,* for appellant.

*G. T. Sullins, Rex W. Perkins, O. E. Williams, Karl Greenhaw, Peter G. Estes* and *Price Dickson,* for appellee.

Robins, J. The instant suit is an effort on the part of appellant, Miss Isabella Mack, aged 82, to recover $5,000 for balance of purchase money admittedly due to her on the sale of her home, a forty acre tract near Fayetteville, Arkansas. Having been denied any relief in the lower court, she has appealed.

In her complaint, which named as defendants the appellees, R. H. Marvin and his wife, Mabel J. Marvin, Fulbright Investment Company, George F. Caudle and his wife, Thelma Caudle, appellant alleged that she sold the land on March 20, 1946, to appellee R. H. Marvin, acting as agent for appellees Fulbright Investment Company and George F. Caudle and wife, for $7,800, of which she was paid $2,800, and for balance she received two checks drawn by appellee Marvin on a Fayetteville bank, each for $2,500 and dated, respectively, May 15, and June 15, 1946; that when she accepted these post-dated checks appellee Marvin showed her a statement of his bank account, reflecting that at the time he had about $9,000 on deposit in the bank on which the checks were drawn; that when she presented the checks for payment the bank refused to pay same because appellee Mabel J. Marvin, wife of R. H. Marvin, had withdrawn all balance in said account, it being payable to either appellee Marvin or his wife; that in 1944, appellees R. H. Marvin and Mabel J. Marvin had acquired a forty-five acre tract, described in the complaint, in Washington county, conveyance having been made to both of them; that after appellee Marvin

obtained deed from appellant for her property he, for the purpose of cheating and defrauding appellant, conveyed said jointly owned tract to his wife.

Appellant prayed for judgment against all of the appellees for $5,000, asked that same be declared a lien on the lands sold by appellant to appellee Marvin, and she also prayed that the deed executed by appellee Marvin to his wife be set aside and a lien declared on the land therein described in favor of appellant for the amount of her judgment. Notice of *lis pendens* was filed by appellant.

In their answers appellees Caudle and wife and Fulbright Investment Company denied that appellee Marvin was their agent in purchasing the property from appellant, and alleged that they, without any notice that appellee Marvin had failed to pay the purchase money to appellant, bought the land from him and paid him therefor.

Appellee Marvin entered his appearance, but filed no answer. His wife's answer was a general denial.

To sustain the issues on her part appellant offered the testimony of appellee Marvin, herself, Berry Vaughn and Richard B. Greer.

Appellee Marvin testified that he obtained the deed (which recited payment of consideration in full) from appellant, paying a total of $2,800 in cash and bonds and turning over to her the two checks referred to in the complaint; that he sold thirty-five acres of the property to appellee Fulbright Investment Company and five acres to appellee Caudle; that he conveyed his interest in the forty-five acre tract (purchased by him and his wife) to his wife; that the transaction with appellant was ''individual''; that the checks were post-dated ''because the wife and I needed the money to use on the place''; that he did have on deposit at that time enough money to pay the checks; that the principal part of the money obtained from appellant's property went to pay for construction of the house he and his wife were building; that after spending this money he borrowed $14,400 and deposited

that in the joint account, but his wife, without his knowledge, drew out the amount of the account, thus causing the checks given to appellant to be dishonored; that in selling appellant's property to Caudle and Fulbright Investment Company he made a profit of $900; that he was not the agent of Fulbright Investment Company and Caudle; that appellee Mabel Marvin was a bookkeeper before her marriage; that the property where he and his wife lived was their homestead; "that there was no part of this transaction that Mrs. Marvin was not totally familiar with"; that the homestead of himself and wife was worth $65,000; that Miss Mack didn't need the money and we did; that his wife knew all about these transactions. This witness introduced in evidence copies of the conveyances involved, including the deed executed by appellee Marvin to his wife, filed for record on July 19, 1946, by which he conveyed the forty-five acre home place to her. (An estrangement between appellees Marvin and his wife, with consequent suit for divorce by her, seemed to have occurred after the transaction with appellant.)

Appellant testified that when appellee Marvin gave her the post-dated checks and obtained the deed from her he told her the checks would be paid and at the same time showed her a bank statement showing he had on deposit in the bank on which these checks were drawn between eight and nine thousand dollars; that the checks were returned to her unpaid by the bank.

Berry Vaughn, vice-president of the bank on which the checks were drawn, introduced ledger sheets showing the account of appellees R. H. Marvin and wife. This account showed deposits of $7,500 and $1,200 on March 21, 1946, these deposits presumably covering proceeds of purchase money obtained from appellees Fulbright Investment Company and Caudle; and also showed subsequent withdrawals which reduced the balance to $396.23 on May 8, 1946, after which the account continued to show a small balance until June 29, 1946, when a deposit of $14,400 was made, which was all withdrawn by July 5,

1946; that, judging from endorsements on the two $2,500 checks drawn in favor of appellant by appellee Marvin, these checks were presented to his bank on July 13, 1946.

Richard B. Greer, circuit clerk, identified the deeds involved and testified as to the time of recording same.

Appellant, being recalled, testified that appellee Marvin had given her his promissory note for $5,500 in lieu of the checks, but that she returned the note to Marvin and kept the checks.

At the conclusion of the testimony on behalf of appellant, appellees Mabel J. Marvin, George F. Caudle and wife and Fulbright Investment Company filed demurrers to the testimony and asked for dismissal of the complaint. The lower court sustained these demurrers and rendered decree dismissing appellant's complaint.

We have heretofore, on motion of appellant, dismissed her appeal as to appellee George F. Caudle and wife.

There is no testimony indicating that appellee Fulbright Investment Company, in buying the thirty-five acre tract from appellee Marvin, after he had obtained from appellant conveyance to himself reciting full payment of purchase money, was other than an innocent purchaser for value. The lower court therefore properly dismissed the complaint as to it.

The action of appellees in filing demurrers to the testimony introduced by appellant was, under our opinion in the case of *Kelley* v. *Northern Ohio Company*, 210 Ark. 355, 196 S. W. 2d 235, equivalent to a submission of the case for final decision on the testimony offered by appellant. In the Kelley case, *supra,* we construed Act 257 of 1945 and considered the effect of a demurrer by defendant to evidence offered by plaintiff in a chancery case. We there said "that the appellees [defendants] waived the right to introduce proof by moving for a decree." Therefore, we treat the case between appellant and appellees Marvin and wife as having been fully heard and finally disposed of by the court below.

The net effect of the testimony in this case is:

Appellant delivered to Marvin a deed, reciting payment in full of purchase money, conveying to him property worth $7,800, and receiving therefor $2,800 in cash and bonds and post-dated checks for $5,000 which proved worthless. When Marvin, a few days after obtaining the deed from appellant, conveyed this property to Caudle and Fulbright Investment Company he collected from them in cash $8,600. Instead of using this money, which arose from appellant's property, to pay her the balance of $5,000 on the purchase money which he owed her, he and his wife used this money in improving real estate jointly owned by them, the interest of appellee Marvin therein having been conveyed to his wife before the due date of the post-dated checks. Mrs. Marvin had full knowledge of all these transactions. She was not ignorant of business affairs, having been an accountant before her marriage.

If the decree of the lower court is affirmed it means that Miss Mack has irretrievably lost $5,000 and that appellee Marvin and his wife have been unjustly enriched at Miss Mack's expense in the same amount.

Appellee Marvin and his wife did not deny this unjust enrichment. He filed no answer, but in his testimony sought to justify his conduct on the ground that his wife was to blame for the situation, because she withdrew from the bank the funds from which the post-dated checks could and should have been paid; and it is urged on behalf of appellee Mabel J. Marvin that she did not owe appellant anything and that she was within her rights when she, with full knowledge of the obligation to pay appellant the amount of the post-dated checks, withdrew the balance in the bank; and it is further argued in her behalf that the property into which this money was diverted was her homestead and therefore exempt from any claim of appellant. Such specious defenses may not be sustained in a court of equity.

When appellant turned over to Marvin the deed conveying her home to him without receiving as much as half of the purchase money therefor, she made it possible for Marvin to deal with this property as his own, and, in view of her age, her evident lack of experience in business affairs and her blind confidence in Marvin, and in view of the fact that, though he had taken from Miss Mack a conveyance acknowledging full payment by him to her when in truth he had at that time paid her only $2,800 of the purchase money, Marvin immediately after collecting it converted to his own use the money obtained by him from Caudle and Fulbright Investment Company for appellant's property, we think there arises naturally an inference that Marvin intended, when he obtained her deed, to defraud appellant, and that therefore a constructive trust in favor of appellant, as to her property and its proceeds, arose when appellee Marvin received his deed which enabled him, without paying appellant her purchase money, to sell the property; in good conscience his relation to her was something more than that of mere debtor. *Lilly* v. *Barron*, 144 Ark. 422, 222 S. W. 712. Under the circumstances appellee Marvin in a sense became appellant's agent *pro hac vice*, and when he collected the purchase money from Caudle and Fulbright Investment Company honesty and good faith demanded that he use these funds to pay his unsecured obligation to appellant. Instead of doing this, he used this trust fund to improve his own property.

''One of the most common cases,'' says Judge STORY, ''in which equity acts upon the ground of implied trusts, *in invitum,* is where a party has received money which he cannot conscientiously withhold from another party.'' Story, Eq. Jur. (13th Ed.), § 1255. ''A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it.'' 54 Am. Jur. 169; Restatement of the Law, Title ''Restitution,'' p. 639.

"An abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground for equitable relief in the form of the declaration and enforcement of a constructive trust, and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. . . . The origin of the confidence reposed is immaterial." 54 Am. Jur. 173.

While appellant in her complaint asked that a lien in her favor be declared on the land conveyed by appellee Marvin to his wife, she did not allege specifically the existence of the trust relationship between her and said appellees. But, in equity, pleadings may be considered as amended to conform to the proof. *Fidelity & Deposit Co. of Maryland* v. *Cowan,* 184 Ark. 75, 41 S. W. 2d 748; *G. H. Hardin & Co.* v. *Nettles,* 192 Ark. 610, 83 S. W. 2d 315. Since the evidence in this case shows the existence of the trust the lower court should have treated the complaint as amended to conform to the proof in this regard.

A trustee may not defeat a trust by investing the trust fund in other property. In such a case equity will permit the *cestui que trust* to follow the misapplied fund into the property which it purchased or improved. *Remchard* v. *Renshaw,* 102 Ark. 309, 143 S. W. 1092; *Humphreys* v. *Butler,* 51 Ark. 351, 11 S. W. 479.

The fact that the property of Marvin has been conveyed to his wife does not alter the situation, because, under the testimony, she was fully aware of her husband's transaction with Miss Mack and knew that money that in good conscience belonged to Miss Mack was used in improving the property which her husband conveyed to her; and according to the undisputed testimony it was Mrs. Marvin's act in withdrawing all the money from the joint account which caused the two checks payable to appellant to be dishonored.

"As a general rule, provided the property can be traced or identified, any third person who has obtained

trust property or its product, by a transfer made in violation of the trust, and who is not a *bona fide* purchaser for value without notice, stands in the same position as the original trustee and takes the property . . . subject to the beneficiary's right to reclaim it and impress it with the trust.'' 65 C. J. 986. *Pindall* v. *Trevor,* 30 Ark. 249; *Fidelity & Deposit Co. of Maryland* v. *Cowan,* 184 Ark. 75, 41 S. W. 2d 748.

There is nothing in the record to indicate that Mrs. Marvin asserted in the lower court a homestead right in the property held by her. But such a claim, even if properly and seasonably made, would not be availing. Trust funds may be traced into a homestead, and a lien in favor of a wronged *cestui que trust* may be impressed on the homestead into which trust money has been diverted.

This is not an attempt to subject, by execution or other process, a homestead to payment of debts due by the owner thereof. In such cases there is a constitutional exemption in favor of the owner except as to liabilities growing out of purchase money, mechanics' liens, and conversion of funds by a trustee of an express trust. But here we are concerned with tracing into a homestead, and recovering out of same, funds wrongfully obtained by the owner and used to improve the homestead; and in such a case the wrongdoer may not avail himself of the homestead exemption to defeat the claim of one whose funds have, in violation of a trust, been used to improve or purchase the homestead.

While most of the adjudicated cases deal with the purchase of homestead with trust funds, there is no difference between the effect of use of such funds to buy a homestead and the use thereof to improve a homestead; and the courts do not hesitate to grant an equitable lien in favor of one whose money is used by a trustee *ex maleficio* to improve a homestead. *Smith* v. *Green,* 243 S. W. 1006; *Jones* v. *Carpenter,* 90 Fla. 407, 106 So. 127, 43 A. L. R. 1409.

Dealing with this question, the Supreme Court of Tennessee in the case of *Preston* v. *Moore,* 133 Tenn. 247,

180 S. W. 320, L. R. A. 1916C, 578, said: "May a trustee *ex maleficio* prevail upon a claim to right of homestead in the realty produced by the avails of his fraud on the *cestui que trust,* against the latter, when the fund is followed into the realty? An affirmative response would shock one's sense of what is equitable, and it is not the response the law gives. Thompson in his work on Homesteads, § 338, says: 'If B has purchased a homestead with the money of A, under such circumstances as would make him a resulting trustee for A, of course he can assert no right of homestead as against A; since, in the eye of a court of equity, A is the owner of the property, and not B.' This court in *Gordon* v. *English,* 3 Lea, 634, referred to the text of Mr. Thompson with approval, and held that not only in cases of resulting trust proper, but also in a case which involved 'a trust which has all the qualities and effects of a resulting trust proper,' was the rule applicable. The wrongdoer, it was there said, 'cannot acquire a homestead right as against the person whose money has been used. The money due the beneficiary is in reality purchase money, against which the homestead exemption cannot prevail.' "

In the case of *Kemp* v. *Enemark,* 194 Cal. 748, 230 P. 441, the Supreme Court of California held that where a husband by deceit obtained funds with which to purchase and improve land which was traded for other land as to which the wife attempted to assert a homestead right against the claim of the person deceived, such homestead right could not be maintained, and in its opinion the court quoted this language from an earlier opinion, *Shinn* v. *MacPherson,* 58 Cal. 596: "There is no provision of the homestead law that affords a cloak for such a transaction. That law was enacted for beneficent purposes, designed to secure home for the family, but  .  .  .  was never intended 'to be a secure and impregnable asylum in which to deposit peculations from others.' "

We conclude that, since a trust relation, with appellant as the beneficiary and appellee Marvin as the trustee, was shown by the testimony, appellant had the right to

trace the trust fund into the property (owned at that time by appellees Marvin and wife) which it was used to improve and that a lien may be impressed thereon for the benefit of appellant, even though it has been conveyed to appellee Mabel J. Marvin.

It follows from what has been said that the decree of the lower court, in so far as it dismissed appellant's complaint against appellee Fulbright Investment Company for want of equity, is affirmed; and, in so far as it dismissed the complaint against appellees R. H. Marvin and Mabel J. Marvin, the decree of the lower court is reversed and the cause remanded to the lower court with directions to render decree against appellees R. H. Marvin and Mabel J. Marvin for $5,000 with interest on $2,500 thereof from May 15, 1946, and on $2,500 thereof from June 15, 1946, at the rate of six per cent. per annum, and to declare a lien therefor in favor of appellant on the land described in the above mentioned conveyance executed by appellee R. H. Marvin to appellee Mabel J. Marvin, and providing for foreclosure of said lien and sale of said land in accordance with the practice for foreclosure of mortgages in chancery court; and all costs of both courts to be adjudged against said last named appellees.